A98A0233. REHEIS v. AZS CORPORATION.
(503 SE2d 36)

POPE, Presiding Judge.

We granted discretionary appeal in this case involving an administrative order and civil penalty issued pursuant to the Georgia Hazardous Waste Management Act, OCGA § 12-8-60 et seq. AZS Corporation held a "corrective action permit" requiring it to rehabilitate groundwater at the site of its former operations in Atlanta. In early 1996, the Environmental Protection Division of the Department of Natural Resources ("EPD") alleged that AZS had violated the permit. After conducting an evidentiary hearing on the matter, an administrative law judge ("ALJ") required AZS to comply with the requirements of the corrective action permit and assessed a civil penalty against the company for its wilful violation of those requirements. Challenging the ALJ's decision, AZS sought judicial review in the superior court, which found the compliance order and penalties improper because the EPD had not first engaged in attempts to remedy the violations by "conference, conciliation, or persuasion" as required by OCGA § 12-8-71 (a). Because we find the ALJ's decision supported by evidence, we must reverse the superior court's judgment.

Under the Administrative Procedure Act, review of an ALJ's decision by a superior court is done without a jury and is confined to

the evidence and testimony received by the ALJ. OCGA § 50-13-19 (g). "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . . . The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." OCGA § 50-13-19 (h). The superior court's review of evidentiary issues is limited to determining whether factual findings are supported by "any evidence." *Hall v. Ault*, 240 Ga. 585, 586 (242 SE2d 101) (1978).

The superior court found as a matter of law that the EPD failed to follow the requirements of OCGA § 12-8-71 (a), which provides: "[w]henever the [EPD] has reason to believe that a violation of [the hazardous waste statutes, regulations, or EPD order] has occurred, the [EPD] shall attempt to remedy the same by conference, conciliation, and persuasion. In the case of failure of such conference, conciliation, or persuasion to correct or remedy any violation, the [EPD] may issue an order directed to such violator. . . . The order . . . may direct that necessary corrective action be taken within a reasonable time to be prescribed in the order." The ALJ, however, found that the EPD *had* engaged in the required attempts at conciliation before it issued a compliance order and sought civil penalties. Under the circumstances of this case, we find that the ALJ's determination on that issue presented a question of *fact*, not law, which was supported by evidence. Therefore, the superior court erred in substituting its factual judgment for that of the ALJ.

The facts of this case are detailed and complex. Evidence allowed the ALJ to find that in 1987, the EPD determined that AZS's facility contained hazardous waste and that the law required AZS to clean the site. The agency issued AZS a "corrective action permit." Pursuant to the permit, it appears AZS put in place devices to extract and remove contaminated groundwater. Progress on the remediation was reviewed after five years, and in 1993 the permit was amended. Among the requirements of the permit, as amended, were that AZS (1) maintain "proof of financial assurance" of its ability to complete the cleanup; and (2) continue its groundwater monitoring and remediation efforts.

In October 1994, however, the bank which issued AZS's letter of credit — i.e., its "financial assurance" — notified the EPD that the letter of credit would soon expire. Despite the EPD's follow-up letter

to AZS reminding the company of its duty to maintain proof of financial assurance, the company failed to do so beyond June 30, 1995. It appears that, by this time, AZS was a defunct corporation dependent on its parent Japanese corporation for funding. Perhaps because of its financial situation, in early 1995 AZS began attempting to convince the EPD to allow it to end the remediation efforts by showing the EPD that the remaining contaminants posed little risk to human health.

On September 28, 1995, AZS sent the EPD a report entitled "Risk Evaluation of the Environmental Conditions at the AZS Chemical Site" (the "September report"), which outlined AZS's argument that its site posed no health risk. At the same time, AZS's attorney sent the EPD a letter in which he argued that the September report "demonstrates that the site has reached a level of cleanliness which will allow AZS to begin a monitoring program leading to closure of this site in the near future." To preserve the limited assets of the corporation for such monitoring, he continued, AZS would "ceas[e] all activity at the site pending the EPD's response to the Report." AZS then stopped all of the required remediation efforts at the site.

Because the EPD did not understand AZS's statement that it would "cease all activity," the agency did not discover until a December 1995 inspection that AZS had stopped complying with the corrective action plan in late September. On January 4, 1996, the EPD notified AZS of the violation, asked that AZS restart the remediation systems, and pointed out that any request to modify the permit would require public notice and participation. AZS's attorney responded a few days later that the September report "is expected to serve as the basis for a Permit modification" and that the company would not continue the "costly and wasteful" remediation process required by the existing permit. In a phone conference a few days later with AZS's environmental consultants in charge of the site, the EPD learned that AZS would also provide no proof of financial assurance on the project until the EPD responded to AZS's September report. On February 6, 1996, the EPD sent AZS another notice of violation containing a proposed "consent order" which would have required AZS to restart remediation and pay a $50,000 penalty. AZS declined to comply. On February 9, 1996, the EPD responded to the September report and offered to meet to discuss AZS's plans to submit a proper permit modification request. In a February 28, 1996 response letter, AZS's attorney told the EPD that any efforts the agency made to enforce the existing remediation permit would "forfeit[ ] further remediation efforts" by AZS. The EPD issued the administrative compliance order on April 17, 1996, and the administrative hearing ensued. Evidence showed AZS never corrected its violations of the existing remediation permit and did not apply for a

modification of the permit or variance from the permit's requirements until July 1996.

To determine whether these facts establish the necessary "conference, conciliation, and persuasion" called for in OCGA § 12-8-71 (a) we must consider the legislative intent behind the statute.[1] It is evident that voluntary compliance with the state's "regulation of the generation, transportation, storage, treatment, and disposal of hazardous wastes" is the objective determined by the legislature to best accomplish the goal of a high quality environment in Georgia, which goal is set out in the declaration of public policy.[2] To achieve voluntary compliance when a violation is detected, the director is to initiate informal dialogue and discourse in an effort to work out a resolution with the offender so the violation is remedied quickly and agreeably, without the compulsion of a formal order.

The director has a duty to "attempt to remedy" the unlawful condition. The means by which this is to be gained is "by conference, conciliation, and persuasion." In other words, the parties are directed by law to try to work it out first. "Conference" between EPD director or designee and apparent violator means "an act of consulting together" or "the interchange of views," and is generally but not always done in a meeting for the purpose of discussion and interchange of opinions.[3]

"Conciliation," the second means or method of reaching a remedy, is "the effort to establish harmony and goodwill" and cooperation. It generally means "the intervention in a dispute by an outsider who seeks to achieve agreement between the disputing parties."[4] Although the legislature did not require that an outside conciliator be hired to carry out this means of resolution, the director would be authorized to follow this course if in the director's judgment it would be more successful than conciliation undertaken directly. The third means, "persuasion," is "an act or the action of influencing the mind by arguments or reasons offered or by anything that moves the mind or passions or inclines the will to a determination."[5]

There being no Georgia legislative history on this practical approach to resolving conflict, and no prior judicial construction of it, we consider its use elsewhere to get a sense of how it has been understood by other courts. Missouri's Hazardous Waste Management Law uses this same language[6] but no Missouri decision has defined it.[7] It

---

[1] OCGA § 1-3-1 (a) ("[i]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly"); see *Pennington & Evans v. Douglas &c. R. Co.*, 3 Ga. App. 665, 675 (3) (60 SE 485) (1908) (look to purpose of act).

[2] OCGA § 12-8-61.

[3] Webster's Third New International Dictionary, p. 475.

[4] Id. at 471.

[5] Id. at 1688.

[6] Mo. Rev. Stat. § 260.410.2.

is also present in Ohio's Civil Rights Act,[8] in Title VII of the federal Civil Rights Act of 1964,[9] and in the Federal Election Campaign Act of 1971.[10]

The Ohio Supreme Court has defined it as "an accomplished effort at meaningful conciliation" and as a good-faith attempt to conciliate.[11] Another Ohio court was more definitive: "The words 'conference, conciliation' and 'persuasion' as used in the statute . . . are limited to conscientious efforts on the part of the [state agency] to resolve a dispute. . . . Directives and ultimata issued by the [state agency] do not, however, comport with such legislative intent. . . ."[12]

A federal court required that under such language "[t]he defendants must have a fair opportunity to review and respond to the [government agency's] findings and have notice of precisely what activities have been found to be violations of the Act. . . . Furthermore, assuming there is adequate notice of the charges, there must be a good faith, affirmative attempt to conciliate every allegation. . . . Where the [government agency] acts in good faith and reasonably responds to the position of a defendant during conciliation, it satisfies its obligation to attempt conciliation."[13]

So it is that, by statute, these informal means are to be tried first, before the power of government by way of enforceable order compelling certain action is imposed. It is a form of due process.

With this in mind, and considering the public policy which the legislature charges the EPD to implement, a review of the history of the dispute between the two parties before it moved to the level of the ALJ supports his finding that the director fulfilled his statutory obligation, albeit unsuccessfully, before issuing the order.

The ALJ specifically found that AZS wilfully and flagrantly violated the corrective action plan when it allowed the proof of financial assurance to lapse, shut down its remediation operations, and refused to comply with the permit until the EPD responded to its September report, even though that report did not constitute a request to modify the existing permit and even though AZS did not request modification of the permit or a variance from the permit's requirements until July 1996. The ALJ also found that the EPD dis-

---

[7] Cf. *Mueller v. Missouri Hazardous Waste Management Comm.*, 904 SW2d 552 (Mo. Ct. App. 1995).

[8] Ohio Rev. Code § 4112.05 (B).

[9] 42 USCA § 2000e-5 (b).

[10] 2 USCA § 437g.

[11] *State ex rel. Republic Steel Corp. v. Ohio Civil Rights Comm.*, 339 NE2d 658, 661 (Ohio 1975).

[12] *Sowers v. Ohio Civil Rights Comm.*, 252 NE2d 463, 473, 478 (Ohio Ct. Common Pleas 1969).

[13] *Federal Election Comm. v. National Rifle Assn. &c.*, 553 FSupp. 1331, 1338-1339 (D.D.C. 1983).

cussed the violations with AZS and gave AZS a chance to comply without penalties. This conclusion is supported by evidence. The EPD wrote AZS on January 4, 1996, asked the company voluntarily to comply, and explained that the hope of a future modification did not excuse compliance with the existing permit. The blunt response from AZS's attorney was that AZS would do none of the required remediation until the EPD responded to its September report, even though that report did not constitute a request for variance or modification of the permit. AZS did not contend that the EPD's remediation requirements were legally improper; rather, the company claimed that its alternate plan would be less expensive and would provide little risk of harm to humans. But as the ALJ found, "[t]he requirement to confer and attempt to conciliate or persuade a violator to return to compliance does not mean [that the EPD] is required to somehow compromise and require less than compliance." A finder of fact could determine that AZS hoped its flagrant violations of the law would force the EPD to compromise, and that the EPD acted reasonably in attempting to convince the company to comply with reasonable remediation demands while seeking modification of the permit. The superior court incorrectly substituted its judgment for that of the ALJ on this issue, and its holding must be reversed.

Our reversal of the superior court's holding renders it unnecessary for us to address the EPD's remaining enumerations of error. As the superior court's order reflects that AZS raised constitutional issues which were not addressed, we remand this matter to the superior court for further proceedings consistent with this opinion.

*Judgment reversed and case remanded with direction. Beasley and Ruffin, JJ., concur.*

DECIDED MAY 28, 1998 —
RECONSIDERATION DENIED JUNE 15, 1998.

*Thurbert E. Baker, Attorney General, Brenda H. Cole, Deputy Attorney General, Robert S. Bomar, Senior Assistant Attorney General, Timothy J. Ritzka, Assistant Attorney General,* for appellant.
*Peyton S. Hawes, Jr., Kimberly A. Dymecki,* for appellee.