A99A0647. REHEIS v. DREXEL CHEMICAL COMPANY.
(514 SE2d 867)

JOHNSON, Chief Judge.

Harold F. Reheis, Director of the Environmental Protection Division of the Georgia Department of Natural Resources ("EPD"), filed

this discretionary appeal from an order of the superior court. In its order, the superior court affirmed an administrative order finding that Drexel Chemical Company violated the Georgia Air Quality Act (the Act), OCGA § 12-9-1 et seq., but struck the $42,000 civil penalty imposed under OCGA § 12-9-23. Because we find the administrative law judge's decision to impose the penalty is supported by the evidence, we reverse the superior court's judgment as to that issue.

1. The EPD argues in its first enumeration of error that the superior court erred in striking the $42,000 civil penalty imposed by the ALJ because evidence exists which supports it.

> Under the Administrative Procedure Act, review of an ALJ's decision by a superior court is done without a jury and is confined to the evidence and testimony received by the ALJ. OCGA § 50-13-19 (g). "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . . . The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." OCGA § 50-13-19 (h). The superior court's review of evidentiary issues is limited to determining whether factual findings are supported by "any evidence." *Hall v. Ault*, 240 Ga. 585, 586 (242 SE2d 101) (1978).

*Reheis v. AZS Corp.*, 232 Ga. App. 852-853 (503 SE2d 36) (1998).

OCGA § 12-9-23 sets civil penalties for violations of the Act and establishes the procedure for seeking penalties and for determining when and how they should be imposed. OCGA § 12-9-23 (a) sets a maximum penalty of $25,000 per violation per day. OCGA § 12-9-23 (b) provides that

> [w]henever the director has reason to believe that any person has violated any provision of this article or any rules or regulations promulgated pursuant to this article or any permit condition or has failed or refused to comply with any final order of the director, he may, upon written request, cause a hearing to be conducted before a hearing officer appointed by the Board of Natural Resources. Upon a find-

ing that such person has violated any provisions of this article or any rule or regulation promulgated pursuant to this article or any permit condition, or has failed or refused to comply with any final order of the director, the hearing officer shall issue his initial decision imposing civil penalties as provided in subsection (a) of this Code section.

When rendering a decision under OCGA § 12-9-23 (b), the ALJ must consider all those factors which are relevant to the decision to impose a civil penalty, including but not limited to those listed in OCGA § 12-9-23 (c) (1) through (6). OCGA § 12-9-23 (c).

In this case, the superior court struck the civil penalty, finding there was no evidence in the record that Drexel had ever been adjudicated in violation of the Act in the past and, therefore, that there was no factual basis for imposing a civil penalty. Further, the superior court concluded there was no evidence showing a "rational analytical approach" in the ALJ's calculation of the $42,000 penalty. Consequently, the superior court concluded that the ALJ's assessment of a $42,000 penalty was "arbitrary and capricious." We disagree.

The ALJ found that Drexel Chemical Company operated a pesticide facility in Cordele, Georgia. There, Drexel stored and formulated pesticides, including malathion, diazanon, dimethoate, parathion, methachlor, vernam, and a variety of other highly toxic chemicals that, if handled improperly, posed a significant threat to human health and the environment. Inhalation of dimethoate and vernam, for example, can cause nervous and muscular dysfunction, paralysis, respiratory failure, and death. Because chemicals like these pose such risks, facilities that are capable of causing or contributing to their airborne emission must obtain an air quality permit and operate in compliance with it. OCGA § 12-9-7.

In September 1990, the EPD issued Drexel an air quality permit with conditions for the construction and operation of a pesticide-mixing facility. From 1991 through 1995, the EPD inspected Drexel's facility five times. Following each inspection, the EPD both orally and in writing warned Drexel that it was not complying with the conditions of its permit. During three of these visits, EPD inspectors observed "fugitive emissions" — chemicals escaping into the air. During two of these visits, inspectors discovered that a carbon filter bed used for mixing liquid chemicals was not being monitored properly. On January 5, 1995, EPD inspectors discovered that Drexel had built and begun operating a new dry blending unit without first obtaining an air quality permit for it. Further, Drexel handled dimethoate improperly, allowing 26 drums of the substance to be stored without lids, exposing the air to toxic fugitive emissions. Drexel also transferred vernam into a storage tank without using proper emission con-

trols. And, Drexel's carbon bed was still not being properly monitored and maintained. Based upon these violations of the Air Quality Act and Drexel's permit, the EPD issued Drexel a Notice of Violation on January 27, 1995. The EPD prepared a consent order which provided for an initial monetary settlement of $21,000. Drexel refused to sign it.

On August 1, 1995, the EPD inspected Drexel's facility again. Upon arriving in Drexel's parking lot, the inspectors smelled a chemical odor. Once inside the facility, they observed several chemical-handling practices which permitted fugitive emissions. Further, the carbon filter bed was still not being properly monitored. Consequently, on August 21, 1995, the EPD issued Drexel a second Notice of Violation. On October 3, 1995, the EPD inspected the facility again. Although the carbon filter bed was now being monitored weekly, vapors from the liquid-mixing facility were still escaping and could be detected by their odor from the parking lot. Therefore, the director filed a request with the Office of State Administrative Hearings to impose a $42,000 penalty upon Drexel.

Based on these factual findings, the ALJ concluded that Drexel was in violation of the Act, DNR Rules and Regulations, and the conditions of its permit in six different ways on at least three different days. Most significantly, Drexel violated OCGA § 12-9-7 (a), DNR Rules 391-3-1-.03 (1) (a) and -.03 (2) (a) and condition 10 of its permit by constructing and operating its dry blending unit before obtaining a permit. It violated OCGA § 12-9-7 (a) and conditions of its permit by storing and handling toxic chemicals without proper emission controls. It violated OCGA § 12-9-7 (a), DNR rules, and the conditions of its permit by failing to properly monitor the carbon filter bed on its liquid-mixing systems. The superior court found, and we agree, that evidence exists to support the ALJ's findings as to the existence of these violations.

Because the ALJ found violations of the Act, DNR rules, and the conditions of Drexel's permit, Drexel was liable for a civil penalty not to exceed $25,000 per day per violation. OCGA § 12-9-23 (a). When deciding whether to impose a civil penalty and, if so, in what dollar amount, the ALJ was required to take into account any factors it found relevant, including, but not limited to, those specified in the statute. OCGA § 12-9-23 (c). In this case, the ALJ specifically considered each of the factors set forth in OCGA § 12-9-23 (c) (1) through (6) and found that evidence adduced on four of these factors weighed in favor of imposing a penalty against Drexel. For example, the ALJ found that Drexel failed to take all feasible steps or procedures necessary or appropriate to comply or to correct the violation or failure. OCGA § 12-9-23 (c) (3). Further, Drexel had a history of failing to comply with "statutes, regulations, orders, or permits administered,

adopted, or issued by the director." OCGA § 12-9-23 (c) (4). These findings are supported by the record evidence and are sufficient to support the imposition of a civil penalty. Contrary to Drexel's argument, there is nothing in OCGA § 12-9-23 (c) that required the ALJ to find that Drexel had previously been *adjudicated* in violation of the Act before a civil penalty could be imposed for the present violations. See OCGA § 12-9-23 (c).

The ALJ's decision to impose a $42,000 civil penalty was supported by the evidence that Drexel was in violation of the Act in six different ways and on at least three different days. Further, the penalty did not exceed that authorized by law. OCGA § 12-9-23 (a). In fact, we agree with the ALJ that the penalty imposed was "only a small percentage of the maximum authorized under law given the number of violations and the length of time" they were allowed to exist. For these reasons, the superior court erred in striking the $42,000 penalty because it was amply supported by the evidence. See *Reheis v. AZS Corp.*, supra. Further, because the ALJ's decision to impose a civil penalty was rationally based on the record evidence and the factors set out in OCGA § 12-9-23 (c), the decision was neither arbitrary nor capricious. See *Sawyer v. Reheis*, 213 Ga. App. 727, 729 (2) (445 SE2d 837) (1994). Because the superior court erred in substituting its judgment for that of the ALJ on the imposition of a civil penalty, we reverse.

2. Our reversal of the superior court's judgment renders it unnecessary for us to address the EPD's remaining enumerations of error.

*Judgment reversed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED MARCH 17, 1999.

*Thurbert E. Baker, Attorney General, Robert S. Bomar, Deputy Attorney General, Isaac Byrd, Senior Assistant Attorney General, Diane L. DeShazo, Assistant Attorney General*, for appellant.

*Roberts, Rainwater & Ingram, David N. Rainwater*, for appellee.