**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY , JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 27, 2015**

# In the Court of Appeals of Georgia

A14A1548, A14A1549. UNITED CEREBRAL PALSY OF GEORGIA, INC. et al. v. GEORGIA DEPARTMENT OF BEHAVIORAL HEALTH AND DEVELOPMENTAL DISABILITIES et al.

MCFADDEN, Judge.

United Cerebral Palsy of Georgia, Inc. and others filed a putative class action lawsuit against the Georgia Department of Behavioral Health and Developmental Disabilities, the Georgia Department of Community Health, and those agencies' commissioners, alleging that the defendants erred in administering the state Medicaid program. The superior court granted the defendants' motion to dismiss on the ground that the plaintiffs had not exhausted their administrative remedies. The plaintiffs appeal, arguing that they were excused from the exhaustion requirement because the

defendants did not give them required notice of the adverse action at issue. We agree and therefore reverse.

1. *Background.*

We review a ruling on a motion to dismiss for failure to exhaust administrative remedies under a de novo standard of review. *Miller County Bd. of Ed. v. McIntosh*, 326 Ga. App. 408, 411 & n. 5 (1) (756 SE2d 641) (2014). The facts regarding the issue of exhaustion of administrative remedies are largely undisputed. The plaintiffs are nonprofit corporations that provide services to Georgia Medicaid patients with intellectual and developmental disabilities ("providers"), the patients who receive those services ("recipients"), and the recipients' family representatives. The defendants are the state agencies that administer the Medicaid program in Georgia and those agencies' commissioners. OCGA § 49-4-142.

"Medicaid is a cooperative federal-state program through which the federal government furnishes financial assistance to the states so that the states may provide necessary medical, rehabilitation, and other services to low-income persons." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1268 (I) (a) (11th Cir. 2000). Although participation in the program is voluntary, states that choose to participate must develop and have approved by the federal government a state Medicaid plan that

2

complies with the requirements of the Medicaid Act. *Wilder v. Virginia Hosp. Assn.*, 496 U. S. 498, 502 (I) (A) (110 SCt 2510, 110 LEd2d 455) (1990). With federal approval, states may enact waiver programs that exempt them from certain otherwise-mandated federal Medicaid requirements. 42 USC § 1396n (b).

In 2007, the federal government approved the two waiver programs at issue in this case: the New Options Waiver Program, which the parties refer to as NOW, and the Comprehensive Supports Waiver Program, which the parties refer to as COMP. NOW and COMP allow the defendants to permit the providers to furnish services to recipients in home and community-based settings rather than in institutions. The waiver programs became part of Georgia's Medicaid plan and were incorporated into a provision of the contracts – known as statements of participation – between the defendants and the providers. See *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 160 (2) (664 SE2d 223) (2008) (provider that signs a statement of participation that incorporates by reference the Department of Community Health's policy manual enters into a contractual relationship with the department).

Under the provisions of the waiver programs and the statements of participation, Medicaid service providers are entitled to be paid certain rates for their services. According to the plaintiffs, since 2008, the defendants have not paid the

providers the approved rates and have limited the amount of services recipients can receive, sometimes to below the amount that is medically necessary. The plaintiffs allege that the defendants made these reductions without public notice and comment as required by federal and state law and without giving the providers or recipients proper notice in violation of their rights to due process and contrary to the terms of the statements of participation.

The plaintiffs filed suit, asserting claims for breach of contract, violation of their rights to administrative remedies under OCGA § 49-4-153 (b) (1), and violation of their constitutional rights. The trial court granted the defendants' motion to dismiss the suit for the plaintiffs' failure to exhaust their administrative remedies. The plaintiffs filed this appeal.

Generally, a party aggrieved by a state agency's decision must exhaust available administrative remedies before seeking equitable or declaratory relief through judicial review. *Perkins v. Dept. of Medical Assistance*, 252 Ga. App. 35, 36 (1) (555 SE2d 500) (2001). The plaintiffs argue that they were excused from the exhaustion requirement because the defendants never gave them the required notice of the adverse agency decision. The defendants counter that the plaintiffs had actual notice, and nothing required them to give any sort of formal notice. We agree with the

4

plaintiffs that under the provisions of the Georgia Medical Assistance Act of 1977, OCGA § 49-4-140 et seq., the regulations, and the policy and procedure manuals, they were entitled to notice before they were required to exhaust administrative remedies.

2. *Administrative review.*

OCGA § 49-4-153 of the Act concerns challenges to decisions of defendant Department of Community Health. Subsection (b) of that statute grants both providers and recipients the right to administrative hearings when they are aggrieved by certain decisions of the Department of Community Health. OCGA § 49-4-153 (b) (1), (b) (2) (A).

(a) *Providers.*

Certain provisions relate exclusively to providers. OCGA § 49-4-153 (b) (2) (A) specifies that providers

> may request a hearing on a decision of the Department of Community Health with respect to a denial or nonpayment of or the determination of the amount of reimbursement paid or payable to such provider on a certain item of medical or remedial care of service rendered by such provider by filing a written request for a hearing in accordance with Code Sections 50-13-13 and 50-13-15 with the Department of Community Health. . . . . The request for hearing shall be filed no later

5

than 15 business days *after the provider of medical assistance receives the decision of the Department of Community Health which is the basis for the appeal*.

OCGA § 49-4-153 (b) (2) (A) (emphasis added). A related regulation, Ga. Comp. R. & Regs. r. 350-4-.04 of the Rules and Regulations for the Department of Medical Assistance (the former name of the Department of Community Health, see 2009 Ga. L. 453 ), directs the Department of Community Health to "offer the opportunity for Administrative Review to any provider against whom it proposes to take an adverse action unless the Department is otherwise authorized by law to take such action without opportunity for appeal by the provider prior to the action's implementation." (The defendants do not argue that they were authorized by law to take the actions at issue without opportunity for appeal by the providers.) The regulation further provides that, "Administrative Review shall be completed, if not waived by the provider, prior to implementation of the proposed action." Ga. Comp. R. & Regs. r. 350-4-.04. It directs that "[t]he procedures and deadlines for obtaining . . . Administrative Review and the deadlines for decisions thereon shall be published in the Policies and Procedures Manual." Id.

In accordance with the regulation, the Georgia Medicaid manual outlines the procedures and deadlines for providers to obtain administrative review. It provides in pertinent part:

> For a provider to obtain Administrative Review, a written request must be received at the address of the office that proposed the adverse action or denial of payment within thirty (30) days of the date *the notification of the proposed adverse action*, the denial of payment, remittance advice or initial review determination was mailed to the provider.

Part I, Policies and Procedures for Medicaid/Peachcare for Kids, Chapter 505 (emphasis added). The manual defines adverse action as "an instance in which the Division denies or reduces the amount of reimbursement claimed by a provider, . . . [or] sets or changes a provider's reimbursement rate." Part I, Policies and Procedures for Medicaid/Peachcare for Kids, Definitions, § 5 (a), (c).

(b) *Recipients.*

Other provisions apply exclusively to recipients. OCGA § 49-4-153 (b) (1) grants recipients the right of administrative review, specifying that:

> any recipient of medical assistance aggrieved by the action or inaction of the Department of Community Health as to any medical or remedial care or service which such recipient alleges should be reimbursed under the terms of the state plan . . . shall be entitled to a hearing upon his or

7

her request for such in writing and in accordance with the applicable rules and regulations of the department and the Office of State Administrative Hearings. . . .

OCGA § 49-4-153 (b) (1). The Medicaid manual outlines the procedures for recipients to obtain administrative review. It provides in pertinent part:

> Should the Department's decision be adverse to the [recipient], the [recipient] (or [recipient's] representative) may request a hearing before an Administrative Law Judge. A hearing must be requested *in writing*. The *hearing request and a copy of the adverse action letter* must be received by the Department within 30 days or less from the date of *the adverse action letter*.

Part I, Policies and Procedures for Medicaid/Peachcare for Kids, Chapter 508 (D) (underline in original; italics added).

Like the Medicaid manual, the COMP and NOW manuals also include provisions regarding administrative review, at least as to the recipients. Both manuals provide in pertinent part:

> Reduction of [COMP/NOW] Services: The participant and/or his/her representative (family member or legal guardian) *will receive written notice of the rights to appeal any reduction of [COMP/NOW] services* from the [Georgia Department of Behavioral Health and Developmental

8

Disabilities] regional office. The notice will outline the process for requesting a fair hearing.

Part II, Policies and Procedures for Comprehensive Supports Waiver Program (COMP), Chapter 709.1 (1); Part II, Policies and Procedures for New Options Waiver Program (NOW), Chapter 709.1 (1) (emphasis added).

3. *Notice.*

Although an administrative body's interpretations of applicable statutes and implementing administrative rules are entitled to deference, see generally *Hosp. Auth. of Gwinnett County v. State Health Planning Agency*, 211 Ga. App. 407, 408 (2) (438 SE2d 912) (1993), its interpretations of its manuals are not. *Pruitt Corp.*, supra, 284 at 159-160 (2). We decline to follow the defendants' interpretation of the Medicaid, COMP, and NOW manuals. And when we consider the applicable provisions of the Medicaid manual, it is clear that the providers were entitled to written notification of the defendants' proposed action to deny or reduce the amount of the providers' reimbursement. Chapter 505 of the manual conditions the provider's entitlement to administrative review on a timely written, request. And the timeliness of the request is calculated from "the date the notification of the proposed adverse action, the denial of payment, remittance advice or initial review determination *was mailed* to the

provider." Id. The plain terms of the manual contemplate the mailing of notice to the provider.

The regulations support this conclusion. Chapter 350-1 concerns the administration of the Department of Community Health. It defines "pleadings" as "*the notice of adverse action issued by the Department which aggrieves the provider*, the provider's Request for hearing requesting review of the adverse action, and any amendments to such documents." Ga. Comp. R. & Regs. r. 350-1-.01 (16) (emphasis added). See also Ga. Comp. R. & Regs. r. 350-4-.19 (1) ("The notice of adverse action issued by the Department and the request for hearing submitted by the provider shall constitute the pleadings in each contested case . . . ."). And it provides that "[a]ll petitions, requests, notices, and decisions referred to in these Rules must be in writing." Ga. Comp. R. & Regs. r. 350-1-.01 (25).

The conclusion that the plaintiffs were entitled to written notice is even clearer regarding recipients: the NOW and COMP manuals expressly state that recipients "will receive written notice of the rights to appeal any reduction of [COMP/NOW] services from the [Georgia Department of Behavioral Health and Developmental Disabilities]." Part II, Policies and Procedures for Comprehensive Supports Waiver

10

Program (COMP), Chapter 709.1 (1); Part II, Policies and Procedures for New Options Waiver Program (NOW), Chapter 709.1 (1).

Because the defendants failed to give the required written notice, they were not entitled to dismissal for the plaintiffs' failure to exhaust administrative remedies. *Chatham County Bd. of Tax Assessors v. Emmoth*, 278 Ga. 144, 146 (1) (598 SE2d 495) (2004). "The [defendants] failed to give the requisite notice and thus [they] cannot take advantage of irregularities for which [they are] responsible." Id. (citation omitted). See also *Fulton-DeKalb Hosp. Auth. v. Metzger*, 203 Ga. App. 595, 597 (4) (417 SE2d 163) (1992) (since defendant's "own actions" prevented aggrieved plaintiff from seeking administrative review, defendant could not complain about plaintiff's failure to exhaust administrative remedies). See also *Smart v. State*, 237 P3d 1010, 1015 (IV) (A) (Alaska 2010) (to be adequate to trigger the obligation to pursue administrative review, notice "must clearly identify the proposed agency action and the party's right to seek administrative relief") (citation omitted).

*Judgments reversed. Andrews, P. J., concur and Ray, J., concur in judgment only.*