In the Supreme Court of Georgia

Decided:   March 25, 2016

S15G1183.  GEORGIA DEPARTMENT OF BEHAVIORAL HEALTH AND DEVELOPMENTAL DISABILITIES et al. v. UNITED CEREBRAL PALSY OF GEORGIA, INC. et al.

NAHMIAS, Justice.

The plaintiffs in this case are providers and recipients of Medicaid services for individuals with intellectual and developmental disabilities who claim that the defendant administrative agencies and their commissioners failed to follow the required procedures before reducing the reimbursement rates paid to the providers and limiting the services available to the recipients.  The plaintiffs did not submit their claims to the agencies for administrative review, instead filing this lawsuit in the trial court.  The trial court granted the defendants' motion to dismiss the case for failure to exhaust administrative remedies, but the Court of Appeals reversed that ruling.  See United Cerebral Palsy of Ga., Inc. v. Georgia Dept. of Behavioral Health & Developmental Disabilities, 331 Ga. App. 616 (771 SE2d 251) (2015).  We granted certiorari

to decide whether the Court of Appeals erred in holding that the defendants' alleged failure to give the plaintiffs proper notice of adverse agency decisions excused the plaintiffs from the exhaustion requirement. As explained below, the plaintiffs were required to raise their defective notice claims in the administrative review process in the first instance. Accordingly, we reverse the judgment of the Court of Appeals.

1. (a) Congress created the Medicaid program in 1965 through amendments to the Social Security Act. See Pharmaceutical Researchers & Mfrs. of Am. v. Walsh, 538 U.S. 644, 650 (123 SCt 1855, 155 LE2d 889) (2003). The program provides subsidies to the states to furnish medical assistance to "families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services." 42 USC § 1396-1. Although a state's participation in the Medicaid program is voluntary, a state that elects to join must administer a state Medicaid plan that meets federal requirements. See Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 433 (124 SCt 899, 157 LE2d 855) (2004). Georgia participates in the general Medicaid program, and the Department of Community Health ("DCH") is the state agency charged with developing and

administering Georgia's Medicaid plan.  See OCGA § 49-4-142.

A state Medicaid plan must establish a scheme for reimbursing health care providers for services provided to program beneficiaries.  See 42 USC § 1396a (a); Wilder v. Virginia Hosp. Assn., 496 U.S. 498, 502 (110 SCt 2510, 110 LE2d 455) (1990).  Since 1981, Congress has authorized states to obtain a waiver allowing the use of Medicaid funds for home and community based care provided to individuals with intellectual and developmental disabilities who otherwise would require institutionalization, including habilitation services, respite care, and case management.  See 42 USC § 1396n (c); Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 601 (119 SCt 2176, 144 LE2d 540) (1999).  This case involves two Georgia waiver programs that the federal government approved in 2007 – the Comprehensive Supports Waiver Program, or "COMP," and the New Options Waiver Program, or "NOW."  The requirements of these waiver programs were incorporated into contracts, known as statements of participation, that the provider plaintiffs entered into with the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD").

(b)    The General Assembly has recognized the need for a robust formal administrative review process to address complaints – which the statute

refers to as "appeals" – by providers and recipients of Medicaid services,

including disputes concerning reimbursement rates and service limitations. See

OCGA § 49-4-153.[1]  Pursuant to § 49-4-153 (b), any Medicaid provider

---

[1]  OCGA § 49-4-153 says in relevant part:

> (a) The Board of Community Health is authorized to establish regulations regarding the manner in which the appeals set forth in subsection (b) of this Code section shall be conducted.
> (b) (1) Any applicant for medical assistance whose application is denied or is not acted upon with reasonable promptness and any recipient of medical assistance aggrieved by the action or inaction of the Department of Community Health as to any medical or remedial care or service which such recipient alleges should be reimbursed under the terms of the state plan which was in effect on the date on which such care or service was rendered or is sought to be rendered shall be entitled to a hearing upon his or her request for such in writing and in accordance with the applicable rules and regulations of the department and the Office of State Administrative Hearings. As a result of the written request for hearing, a written recommendation shall be rendered in writing by the administrative law judge assigned to hear the matter. Should a decision be adverse to a party and should a party desire to appeal that decision, the party must file a request in writing to the commissioner or the commissioner's designated representative within 30 days of his or her receipt of the hearing decision. The commissioner, or the commissioner's designated representative, has 30 days from the receipt of the request for appeal to affirm, modify, or reverse the decision appealed from. A final decision or order adverse to a party, other than the agency, in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated, and the effective date of the decision or order. Findings of fact shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. Each agency shall maintain a properly indexed file of all decisions in contested cases, which file shall be open for public inspection except those expressly made confidential or privileged by statute. If the commissioner fails to issue a decision, the initial recommended decision shall become the final administrative decision of the commissioner.
> > (2) (A) A provider of medical assistance may request a hearing on a decision of the Department of Community Health with respect to a denial or nonpayment of or the determination of the amount of

4

reimbursement paid or payable to such provider on a certain item of medical or remedial care of service rendered by such provider by filing a written request for a hearing in accordance with Code Sections 50-13-13 and 50-13-15 with the Department of Community Health. The Department of Community Health shall, within 15 business days of receiving the request for hearing from the provider, transmit a copy of the provider's request for hearing to the Office of State Administrative Hearings. The provider's request for hearing shall identify the issues under appeal and specify the relief requested by the provider. The request for hearing shall be filed no later than 15 business days after the provider of medical assistance receives the decision of the Department of Community Health which is the basis for the appeal.

(B) The Office of State Administrative Hearings shall assign an administrative law judge to hear the dispute within 15 days after receiving the request. The hearing is required to commence no later than 90 days after the assignment of the case to an administrative law judge, and the administrative law judge shall issue a written decision on the matter no later than 30 days after the close of the record except when it is determined that the complexity of the issues and the length of the record require an extension of these periods and an order is issued by an administrative law judge so providing, but no longer than 30 days. Such time requirements can be extended by written consent of all the parties. Failure of the administrative law judge to comply with the above time deadlines shall not render the case moot.

(C) A request for hearing by a nursing home provider shall stay any recovery or recoupment action.

(D) Should the decision of the administrative law judge be adverse to a party and should a party desire to appeal that decision, the party must file a request therefor, in writing, with the commissioner within ten days of his or her receipt of the hearing decision. Such a request must enumerate all factual and legal errors alleged by the party. The commissioner, or the commissioner's designated representative, may affirm, modify, or reverse the decision appealed from.

(3) A person or institution who either has been refused enrollment as a provider in the state plan or has been terminated as a provider by the Department of Community Health shall be entitled to a hearing; provided, however, that no entitlement to a hearing before the department shall lie for refusals or terminations based on the want of any license, permit, certificate, approval, registration, charter, or other form of permission issued by an entity

5

other than the Department of Community Health, which form of permission is required by law either to render care or to receive medical assistance in which federal financial participation is available. The final determination (subject to judicial review, if any) of such an entity denying issuance of such a form of permission shall be binding on and unreviewable by the Department of Community Health. In cases where an entitlement to a hearing before the Department of Community Health, pursuant to this paragraph, lies, the Department of Community Health shall give written notice of either the denial of enrollment or termination from enrollment to the affected person or institution; and such notice shall include the reasons of the Department of Community Health for denial or termination. Should such a person or institution desire to contest the initial decision of the Department of Community Health, he or she must give written notice of his or her appeal to the commissioner of community health within ten days after the date on which the notice of denial or notice of termination was transmitted to him or her. A hearing shall be scheduled and commenced within 20 days after the date on which the commissioner receives the notice of appeal; and the commissioner or his or her designee or designees shall render a final administrative decision as soon as practicable thereafter.

(c) If any aggrieved party exhausts all the administrative remedies provided in this Code section, judicial review of the final decision of the commissioner may be obtained by filing a petition within 30 days after the service of the final decision of the commissioner or, if a rehearing is requested, within 30 days after the decision thereon. The petition may be filed in the Superior Court of Fulton County or in the superior court of the county of residence of the petitioner. When the petitioner is a corporation, the action may be brought in the Superior Court of Fulton County or in the superior court of the county where the petitioner maintains its principal place of doing business in this state. Copies of the petition shall be served upon the commissioner and all parties of record. The petition shall state the nature of the petitioner's interest, the facts showing that the petitioner is aggrieved by the decision, and any grounds upon which the petitioner contends that the decision should be reversed or modified. Judicial review of the commissioner's decision may be obtained in the same manner and under the same standards as are applicable to those contested cases which are reviewable pursuant to Code Section 50-13-19; provided, however, that no other provision of Chapter 13 of Title 50 shall be applicable to the department with the exception of Code Sections 50-13-13 and 50-13-15. Notwithstanding any other provision of law, a stay of the commissioner's final decision may be granted by a reviewing court to a provider of medical assistance only on condition that such provider posts bond with the commissioner in favor of the state, with good and sufficient surety thereon by a surety company licensed to do business in this state, in an amount determined by the commissioner to be sufficient

dissatisfied with "a decision of [DCH] with respect to a denial or nonpayment of or the determination of the amount of reimbursement paid or payable to such provider," and any Medicaid recipient "aggrieved by the action or inaction of [DCH] as to any medical or remedial care or service which such recipient alleges should be reimbursed," may obtain a hearing before an administrative law judge ("ALJ") from the Office of State Administrative Hearings ("OSAH") by filing a proper written request with DCH. The ALJ's decision on the dispute may be appealed by the losing party to the DCH Commissioner for a final agency decision. See OCGA § 49-4-153 (b).

The statute sets forth various deadlines and other procedural requirements governing this administrative review process, and OCGA § 49-4-153 (a) also authorizes DCH to "establish regulations regarding the manner in which the [administrative review] set forth in subsection (b) shall be conducted." DCH has promulgated such regulations. See Ga. Comp. R. & Regs. 350-4-.01 to 350-4-.30 ("DCH Rules"). For example, DCH Rule 350-4-.04 says:

---

to recompense the state for all medical assistance which otherwise would not be paid to the provider but for the granting of such a stay. A stay may be granted and renewed for time intervals up to three months, so long as bond is posted for every interval of time in which the stay is in effect. . . .

The Department shall offer the opportunity for Administrative Review to any provider against whom it proposes to take an adverse action unless the Department is otherwise authorized by law to take such action without opportunity for appeal by the provider prior to the action's implementation. The procedures and deadlines for obtaining such Administrative Review and the deadlines for decisions thereon shall be published in the Policies and Procedures Manual for each service category to which they apply. Administrative Review shall be completed, if not waived by the provider, prior to implementation of the proposed action. Whenever the opportunity for Administrative Review is available to the provider, such Administrative Review must be timely obtained and completed for the provider to be entitled to a hearing.

See also DCH Division of Medicaid, Policies and Procedures for Medicaid/Peachcare for Kids § 505 (Jan. 1, 2016) (explaining that DCH "offers the opportunity for Administrative Review to any provider against whom it proposes to take an adverse action"); DCH Division of Medicaid, Policies and Procedures for Comprehensive Supports Waiver Program (COMP) and New Options Waiver Program (NOW) General Manual § 709.1 (Jan. 1, 2016) (requiring DCH to provide "written notice of the rights to appeal any reduction of COMP/NOW services" to recipients).[2]

How and when this administrative review process is initiated is discussed

---

[2] There are also federal Medicaid regulations regarding notice to beneficiaries of adverse actions by state agencies and requests for hearings. See, e.g., 42 CFR §§ 431.210 to 431.223.

in DCH Rule 350-4-.05.[3]  DCH Rule 350-4-.06 (g) authorizes the ALJ to

---

[3]  DCH Rule 350-4-.05 says:

(1) A request for a hearing must be in writing and received by the Department:
      (a) within ten (10) days after the date on which a notice of denial of a request for enrollment or notice of suspension or termination was transmitted to the provider; or
      (b) concerning any other action or inaction by the Department which aggrieves the provider, within ten (10) days after the date of the later of:
            1. the Department's action for which the hearing is sought, if no opportunity for Administrative Review was available, or
            2. notice of the final decision of the entity to which request for Administrative Review has been addressed.
In determining the timeliness of a request, the Department will compute the number of days in accordance with Rule 350-1-.01 (24), if the date of the provider's receipt of notice of the adverse action being appealed is known to the Department; if the date of receipt by the provider is not known, the Department shall add five (5) days from the date of transmission of the notice to allow for delivery.  Nothing herein shall bar proof of actual date of receipt by the provider or its agent, subject to the provisions of subsection 19.
(2) The request for a hearing must include all of the following:
      (a) a clear expression by the provider or an authorized representative that the provider wishes to present a case to an Administrative Law Judge;
      (b) identification of the adverse administrative review decision or other Department action being appealed and, if only part of such decision or action aggrieves the provider, the specific part which the provider will address at the hearing;
      (c) a specific statement of why the provider believes the administrative review decision or other Department action is wrong; and
      (d) a statement of the relief sought.
(3) If any of the requirements listed in Paragraph (2) have not been met, the Department shall so notify the provider.  Thereafter, the Department must receive a corrected request within ten (10) days of the provider's receipt of the deficiency notice or the request shall be deemed untimely.
(4) Requests for hearings shall be denied if the Department determines that:
      (a) the request was not timely filed;
      (b) the action or inaction appealed by the provider is solely the result of a change in state or federal law;
      (c) the issues raised by the provider fall outside the jurisdiction of the administrative hearing process; or

determine whether a hearing request by which a provider or recipient seeks to initiate the administrative review process should be dismissed because "the requesting party has not met the prerequisites for obtaining a hearing."

The statute also provides the opportunity for judicial review of Medicaid disputes. Under OCGA § 49-4-153 (c), an aggrieved provider or recipient dissatisfied with the Commissioner's final decision may petition for review in the appropriate superior court – but only if the aggrieved party first "exhausts all the administrative remedies provided in [§ 49-4-153]." See also OCGA § 50-13-19[4]; Perkins v. Dept. of Med. Assistance, 252 Ga. App. 35, 37 (555 SE2d 500) (2001) ("Under the Georgia Administrative Procedure Act, [judicial]

---

(d) the requesting party has not been aggrieved.
If there is a bona fide question of fact concerning any of the items described in this Subsection 4, and the provider establishes such question of fact by sworn affidavit within a reasonable time set by the Office of Special Services and made known in writing to the provider, the Department shall grant a hearing and defer these questions for final determination by the Administrative Law Judge.

[4] OCGA § 49-4-153 (c) expressly invokes OCGA § 50-13-19, a provision of the Georgia Administrative Procedure Act that says the following about exhaustion of administrative remedies as a prerequisite to judicial review of an agency's decisions:

Any person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter. This Code section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

10

appeal from decisions of [DCH] regarding a denial, nonpayment, or determination of the amount of reimbursement paid or payable requires an administrative appeal filed with [DCH].").

(c)    On August 8, 2013, United Cerebral Palsy of Georgia, Inc. and three other Georgia nonprofit corporations that provide services to Medicaid patients with intellectual and developmental disabilities under the COMP and NOW waiver programs, along with four individuals who receive those services (collectively, "plaintiffs"), filed a putative class action complaint against DCH, DBHDD, and their commissioners (collectively, "defendants") in the Superior Court of Fulton County ("trial court").  The complaint alleged that since 2008, the defendants have used various unapproved and secretive methods to avoid paying providers the approved reimbursement rates and to limit the amount of services that recipients can receive, sometimes to below the amount that is medically necessary.  According to the plaintiffs, the defendants made these reductions without public notice and comment as required by federal and state law and without giving the plaintiffs proper advance notice as required by the terms of the statements of participation, federal and state law, and constitutional due process.  The complaint sought declaratory and injunctive relief, damages,

11

and attorney fees and expenses for alleged breach of contract, as-applied violations of federal constitutional rights, violations of the Social Security Act, and violations of rights to administrative remedies under OCGA § 49-4-153 (b) (1). It is undisputed that the plaintiffs had not sought any sort of formal administrative review of their claims; they took their case directly to the trial court.

On September 9, 2013, the defendants filed an answer and a motion to dismiss, arguing among other things that the plaintiffs filed their lawsuit prematurely without first exhausting their available administrative remedies. On November 21, 2013, the trial court entered an order dismissing the complaint for failure to exhaust administrative remedies.

The plaintiffs appealed, and the Court of Appeals reversed, with one judge concurring in the judgment only. See United Cerebral Palsy, 331 Ga. App. at 622. The Court of Appeals acknowledged that parties aggrieved by an agency decision generally must exhaust available administrative remedies before seeking relief by judicial review. See id. at 618. However, the court analyzed the provisions of OCGA § 49-4-153, the DCH Rules, and the Medicaid manuals; decided that the defendants had failed to give the plaintiffs prior

12

written notice of adverse agency decisions as required; and concluded that the lack of proper notice excused the plaintiffs from having to seek administrative review of their claims regarding alleged reductions in reimbursement rates and covered services. See id. at 618-621. This Court granted certiorari to review that conclusion.

2. (a) Under long-standing Georgia law, the failure of plaintiffs to exhaust their available administrative remedies ordinarily precludes judicial relief. See Georgia Dept. of Community Health v. Georgia Soc. of Ambulatory Surgery Centers, 290 Ga. 628, 629 (724 SE2d 386) (2012). See also Perkins, 252 Ga. App. at 37 ("[T]imely judicial review of a final agency decision after an administrative appeal can be made to the superior court only if the condition precedent of exhaustion of an administrative appeal has first been completed. OCGA§§ 49-4-153 (c); 50-13-19."). As the United States Supreme Court has explained:

> The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. Exhaustion of administrative remedies serves two main purposes. First, exhaustion protects administrative agency authority. Exhaustion gives an agency an opportunity to correct its

13

own mistakes with respect to the programs it administers before it is haled into . . . court, and it discourages disregard of [the agency's] procedures. Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation . . . . In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in . . . court. And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.

Woodford v. Ngo, 548 U.S. 81, 88-89 (126 SCt 2378, 165 LE2d 368) (2006)

(citations and punctuation omitted).

This Court has similarly observed that

"[t]he rationale for requiring exhaustion of administrative remedies is that resort to the administrative process will permit the agency to apply its expertise, protect the agency's autonomy, allow a more efficient resolution, and result in the uniform application of matters within the agency's jurisdiction."

Ambulatory Surgery Centers, 290 Ga. at 629 (quoting Cerulean Cos. v. Tiller, 271 Ga. 65, 66 (516 SE2d 522) (1999)). We have also emphasized that "'[o]nly in rare instances will the requirement of exhaustion be relaxed.'" Id. (quoting Moss v. Central State Hosp., 255 Ga. 403, 404 (339 SE2d 226) (1986)). Plaintiffs may bring their claims directly to court where there is no adequate administrative procedure available for challenging the type of administrative

14

decision in question. See, e.g., <u>Feminist Women's Health Ctr. v. Burgess</u>, 282 Ga. 433, 436 (651 SE2d 36) (2007) (holding that exhaustion was not required where the plaintiffs challenged the constitutionality of the state Medicaid plan itself and no statute or rule authorized an administrative procedure for reviewing such facial challenges); <u>Aldridge v. Georgia Hospitality & Travel Assoc.</u>, 251 Ga. 234, 237 (304 SE2d 708) (1983) (same where the plaintiff challenged the assessment of county inspection fees and no county ordinance or state law provided a means to challenge the imposition of such fees).

In addition, this Court has recognized a "futility" exception to the exhaustion requirement, defined narrowly as a situation where further administrative review would result in another decision on the same issue by the same body. <u>Elbert County v. Sweet City Landfill, LLC</u>, 297 Ga. 429, 433 (774 SE2d 658) (2015). See, e.g., <u>Powell v. City of Snellville</u>, 266 Ga. 315, 316 (467 SE2d 540) (1996) (holding that the plaintiff was not required to file an application for rezoning before going to court where the city government had already voted twice to rezone her property over her objection). Administrative review is not ordinarily deemed futile, however, because the aggrieved parties are pessimistic about obtaining a favorable outcome, see <u>Elbert County</u>, 297 Ga.

15

at 433, even where plaintiffs seek to justify their pessimism based on positions taken by the administrative decision-maker outside of and prior to the normal administrative process, such as positions taken in defending a lawsuit brought without exhausting administrative remedies, see Ambulatory Surgery Centers, 290 Ga. at 629-630.

(b)     This Court has never recognized a wholesale exception to the exhaustion doctrine for alleged procedural errors by an administrative agency. To the contrary, we recently explained that an agency's "'failure to perfectly comply with all of the intricacies of the administrative process [does not] necessarily constitute extra-jurisdictional action by [the] agency'" that could excuse a failure to exhaust administrative remedies; thus, aggrieved parties cannot justify going straight to court merely by alleging that the agency "'failed to meet certain statutory procedural requirements.'"   Id. at 630 (citation omitted).  "Long-standing Georgia law requires that a party aggrieved by a state agency's decision must raise *all issues* before that agency and exhaust available administrative remedies before seeking any judicial review of the agency's decision." Tiller, 271 Ga. at 66 (emphasis added).  See also We, the Taxpayers v. Board of Tax Assessors of Effingham County, 292 Ga. 31, 33 (734 SE2d 373)

16

(2012) (reiterating in the context of tax disputes that "'constitutional and procedural issues,'" as well as substantive tax issues, must normally be addressed to the administrative review process (citation omitted)); OCGA § 50-13-19 (a) (providing for immediate (i.e., interlocutory) judicial review of an agency "procedural . . . ruling" where review of the final agency decision would not provide an adequate remedy). Thus, generally speaking, procedural issues are subject to the exhaustion requirement just like substantive issues.

The exhaustion requirement is particularly important in this case, given that the plaintiffs question the methods by which the defendants determined and applied the service allotments for potentially thousands of Medicaid recipients and the reimbursement amounts for their providers. Resolving these issues inherently involves the defendants' expertise in the contours of the Medicaid program, applicable federal and state statutes and regulations, and the policies and procedures set forth in the Georgia Medicaid manuals.[5] The plaintiffs

---

[5] See Wos v. E.M.A., 568 U.S. ___, ___ (133 SCt 1391, 1404-1405, 185 LE2d 471) (2013) (Roberts, C.J., dissenting) (observing in a Medicaid case that "[t]he books are thick with federal regulations that States must interpret and reconcile. By my count, at least 39 federal-court opinions, including one of our own, have reiterated Judge Friendly's observation that Medicaid law is 'almost unintelligible to the uninitiated,'" and repeating a federal district court's description of Medicaid law as "'an aggravated assault on the English language, resistant to attempts to understand it'") (citations omitted)).

17

acknowledge the difficult and specialized issues that would face a trial court or jury in resolving their claims; their brief discusses the "complexity of health care reimbursement methodology." Such complex administrative decisions are clearly within the purview of administrative review, and executive agencies are entitled to apply their expertise to obtain uniformity of results by deciding such questions in the first instance. See, e.g., Bentley v. Chastain, 242 Ga. 348, 350-351 (249 SE2d 38) (1978).[6]

The concept is straightforward: If a party believes an administrative agency made a procedural mistake regarding notice of an adverse decision, the aggrieved party should ordinarily give the agency the opportunity to correct the mistake (if indeed it was a mistake) through the established administrative review process, instead of asking a court to decide the notice dispute – much

---

[6] The defendants have suggested that the plaintiffs made a strategic decision to forgo administrative review in order to pursue their claims in court on a class-action basis under the Civil Practice Act. See OCGA § 9-11-23. However, enforcing the exhaustion requirement would not necessarily prevent providers or recipients from pursing relief in court on a class-action basis once the administrative review process is complete. See Barnes v. City of Atlanta, 281 Ga. 256, 258 (637 SE2d 4) (2006) (noting the general principle that class representatives may act on behalf of the entire class and explaining that "'[w]here . . . exhaustion of administrative remedies is a precondition for suit, the satisfaction of this requirement by the class plaintiff normally will avoid the necessity for each class member to satisfy this requirement individually'" (citation omitted)).

18

less the underlying substantive dispute – in the first instance.[7]

(c)     The plaintiffs devote much of their briefs to arguing the merits of whether they got proper notice of the allegedly invalid agency actions and decisions, asserting that until they did, they could not start the administrative review process established by OCGA § 49-4-153. But the plaintiffs clearly had actual notice of the actions and decisions they dispute by the time they filed their complaint disputing these matters in August 2013. The question is whether at that point they could file their complaint in court and bypass the administrative review process. Allowing them to do so would require courts to decide both the notice issues and the underlying substantive issues in the first instance. Administrative law commits both sets of issues to the administrative process in the first instance.

---

[7] This concept is not unique to administrative law. Indeed, a similar exhaustion requirement is imposed, albeit not by that name, in everyday litigation, when a party claims on appeal that it did not receive the statutorily required notice of a trial court order and thus was unable to file a timely appeal. The appellate court will not decide the notice issue in the first instance, and indeed will dismiss the untimely appeal for lack of jurisdiction. The proper process is for the party to file a motion in the trial court to set aside the order (or to allow an out-of-time direct appeal in a criminal case), which allows the trial court to make findings in the first instance as to whether the required notice was properly provided and to take (or not take) remedial action as appropriate based on those findings; that ruling may then be appealed, with the appellate court having the benefit of the trial court's decision. See Veasley v. State, 272 Ga. 837, 838-839 (537 SE2d 42) (2000). See also Wright v. Young, 297 Ga. 683, 683-684 (777 SE2d 475) (2015).

19

This is not a situation where the agency plainly has no administrative review process available to consider the types of matters in dispute. OCGA § 49-4-153 establishes a process that appears amenable to review of the plaintiffs' notice and substantive claims, and the defendants have not taken the position that DCH's administrative review process is closed to consideration of either the notice or the substantive claims (although the defendants have offered arguments against the merits of both sets of claims). If presented to DCH with a demand for a hearing by an OSAH ALJ, it appears that there would be three basic possible outcomes (which might vary with regard to particular claims and claimants): (1) a ruling that no notice of adverse action was required, because there was no change in the rates of reimbursement or amount of services allowed; (2) a ruling that notice was properly given earlier and a consequent dismissal of the underlying substantive claims as untimely; or (3) a ruling that notice was not properly given and a corresponding ruling about whether the untimeliness of the substantive claims can and should be excused (or proper notice ordered to be given now) as a matter of contractual, regulatory, statutory, or constitutional law. If the ALJ reached the plaintiffs' substantive claims and found them to be meritorious, the ALJ could craft appropriate remedies based

20

on the judge's expertise with the Medicaid statutes and rules.

If the plaintiffs were unsatisfied with the ALJ's rulings, they could seek review by the DCH commissioner. If still unsatisfied, they could properly seek judicial review. If the case got that far, the trial court could rule on whatever issues had been raised in the administrative process, but those issues likely would have been narrowed, and the court would have the benefit of the administrative record and the decision of administrative experts. See Woodford, 548 U.S. at 88-89; Ambulatory Surgery Centers, 290 Ga. at 629. We express no opinion on the merits of the plaintiffs' notice or substantive claims at this time, because the plaintiffs have not yet exhausted their administrative remedies as to those claims.

(d)     The Court of Appeals cited two Georgia cases to support its conclusion that the plaintiffs were entitled to bypass DCH's administrative review process entirely and proceed directly to court to obtain a ruling on the merits of their notice and substantive claims. See Chatham County Bd. of Tax Assessors v. Emmoth, 278 Ga. 144 (598 SE2d 495) (2004); Fulton-DeKalb Hosp. Auth. v. Metzger, 203 Ga. App. 595 (417 SE2d 163) (1992). Emmoth and Metzger, however, involved aggrieved parties who sought administrative

21

review of their claims, at least initially, before filing a lawsuit. See Emmoth, 278 Ga. at 145; Metzger, 203 Ga. App. at 597. Indeed, in Metzger, the hospital authority's agent advised the plaintiff that no further administrative review was available. See 203 Ga. App. at 597. By contrast, the plaintiffs here did not submit any of the claims alleged in their complaint to the formal DCH administrative review process, and there is no allegation that the defendants told them that such claims could not be considered in that process.

In addition, in Emmoth, unlike in this case, there is no indication that the agency disputed that it had failed to give proper notice; moreover, the remedy in Emmoth was not to allow the trial court to decide the ultimate merits of the taxpayer's preferential assessment claim, but rather to send that matter back to the Board of Tax Assessors to determine in the first instance. See id. at 146. To the extent that Emmoth may be read to suggest that a plaintiff need not exhaust administrative remedies whenever an administrative body has given her a notice of its decision without including statutorily required language regarding how to seek further administrative review of that decision, it is hereby disapproved.[8]

---

[8] In support of its exhaustion holding, Emmoth cited only Ledbetter Trucks, Inc. v. Floyd County Bd. of Tax Assessors, 240 Ga. 791 (242 SE2d 596) (1978). But Ledbetter involved a notice of the right to further administrative appeal that was misleading, not just inadequate, and more

22

(e)   For all of these reasons, we conclude, contrary to the Court of Appeals, that the plaintiffs were required to present their claims regarding improper notice of rate reductions and service limitations to DCH for administrative review before filing this lawsuit.

Judgment reversed.  All the Justices concur.

---

importantly, the opinion in Ledbetter did not discuss exhaustion of administrative remedies.  See id. at 791-792.  To the contrary, this Court explained that regardless of whether the taxpayers had properly appealed to the Board of Equalization after receiving the misleading notice, the Board had decided their appeal, waiving any objection to the form of the appeal and allowing the subsequent judicial review of the case.  See id.