A05A1374. CITY OF RINCON v. COUCH et al.
(623 SE2d 754)

BERNES, Judge.

The City of Rincon appeals from the order entered by the Superior Court of Fulton County that affirmed the final decision of an administrative law judge ("ALJ") denying the City's application for an additional groundwater withdrawal permit. For the reasons that follow, we affirm.

The record reflects that when reviewing monthly operation reports submitted by the City of Rincon in 2001, the Environmental Protection Division of the Georgia Department of Natural Resources ("EPD") discovered that the City was violating its existing groundwater withdrawal permit authorizing it to withdraw 0.087 million gallons of water per day ("MGD") from the Upper Floridan Aquifer. After consulting and negotiating over the issue, the EPD and the City entered into a consent order in April 2002 (the "Consent Order"). The Consent Order obligated the City to take steps to prevent future violations of groundwater withdrawal limits. Among other things, the City was required to submit engineering plans and a work schedule for connecting the City's existing water line to an Effingham County 36″ transmission main which was connected to Savannah's surface water supply system.

Pursuant to OCGA § 12-5-189, the Superior Court of Effingham County thereafter entered an order and judgment enforcing the Consent Order. In a separate case, the City appealed. We affirmed the superior court's order. *City of Rincon v. Couch*, 272 Ga. App. 411 (612 SE2d 596) (2005), cert. denied, Sept. 19, 2005 (*"Rincon I"*).

In September 2003, the EPD received an additional application from the City for a second groundwater withdrawal permit. In its application, the City requested that it be permitted to take additional groundwater in the amount of 2.00 MGD from a new well that the City had drilled into the Lower Floridan Aquifer. On December 18, 2003, the Director of the EPD denied the City's application, stating that the City had "failed to demonstrate a need or necessity for the new water withdrawal" in light of the Consent Order which obligated the City to satisfy its water needs by connection to the Effingham County transmission main.

In January 2004, the City challenged the EPD's denial, and the matter was referred to an ALJ in the Office of State Administrative

Hearings. The parties filed cross-motions for summary determination. The ALJ subsequently granted the EPD's motion for summary determination and denied the City's cross-motion for summary determination. The ALJ's decision constituted the final administrative decision of the Georgia Board of Natural Resources. OCGA § 12-2-2 (c) (2).[1]

In September 2004, the City filed its Petition for Judicial Review in the Superior Court of Fulton County. The superior court received briefs and heard oral argument, but the ALJ's Final Decision was affirmed by operation of law on December 8, 2004 when no order was issued within 30 days of the hearing. See OCGA § 12-2-1 (c).

We granted the City's application for discretionary appeal. When reviewing the affirmance of an administrative agency decision, "our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the . . . administrative agency." (Citation and punctuation omitted.) *Sawyer v. Reheis*, 213 Ga. App. 727, 729 (1) (445 SE2d 837) (1994). When the final administrative decision at issue is an ALJ's grant of summary determination, we review de novo the law and evidence. *Children's Hosp. of Pittsburgh v. Ga. Dept. of Med. Assistance*, 235 Ga. App. 697, 700 (1) (509 SE2d 725) (1998). Guided by these standards, we turn to the specific enumerations of error asserted by the City.

1. The City argues that the ALJ erred by failing to conclude that the EPD may deny a groundwater withdrawal permit only after considering each of the ten factors set forth in OCGA § 12-5-96 (d) (1)-(10) of the Ground-water Use Act.[2] We disagree.

---

[1] Hereinafter, the ALJ's decision will be referred to as the "Final Decision."

[2] The Ground-water Use Act of 1972, OCGA § 12-5-90 et seq., provides that the EPD shall consider the following factors when considering an application for groundwater withdrawal:
> (1) The number of persons using an aquifer and the object, extent, and necessity of their respective withdrawals or uses;
> (2) The nature and size of the aquifer;
> (3) The physical and chemical nature of any impairment of the aquifer adversely affecting its availability or fitness for other water uses, including public use;
> (4) The probable severity and duration of such impairment under foreseeable conditions;
> (5) The injury to public health, safety, or welfare which would result if such impairment were not prevented or abated;
> (6) The kinds of businesses or activities to which the various uses are related;
> (7) The importance and necessity of the uses, including farm uses, claimed by permit applicants under [Code Section 12-5-96], or of the water uses of the area under Code Section 12-5-95, and the extent of any injury or detriment caused or expected to be caused to other water uses, including public use;
> (8) Diversion from or reduction of flows in other watercourses or aquifers;
> (9) A regional water development conservation and sustainable use plan, where applicable; and
> (10) Any other relevant factors.

The City has not provided this Court with any citations to the record showing that the EPD reached its decision to deny the City's application for groundwater withdrawal upon a consideration of fewer than all of the applicable statutory factors, nor have we located any evidence in the record indicating as much. Furthermore, there is no statutory or regulatory requirement that the EPD issue findings of fact and conclusions of law demonstrating its consideration of all ten factors.

While the EPD's denial emphasized that the City had failed to establish a "need or necessity for a new water withdrawal" under OCGA § 12-5-96 (d) (1), absent mandatory statutory language to the contrary, an administrative agency is entitled to place more emphasis on one statutory factor than another. *Dept. of Community Health &c. v. Gwinnett Hosp. System*, 262 Ga. App. 879, 889 (3) (586 SE2d 762) (2003). "[S]uch emphasis is entitled to great deference by a reviewing court." (Citation omitted.) Id. at 890 (3); *Reheis v. Baxley Creosoting & Osmose Wood Preserving Co.*, 268 Ga. App. 256, 263 (3) (601 SE2d 781) (2004); *Bd. of Natural Resources v. Ga. Emission Testing Co.*, 249 Ga. App. 817, 822 (3) (548 SE2d 141) (2001).

Moreover, the EPD's emphasis on the necessity of the groundwater withdrawal is consistent with the policy of limiting and conserving water resources as set forth by the Ground-water Use Act. Specifically, the Act provides that:

> [t]he general welfare and public interest require that the water resources of the state be put to beneficial use to the fullest extent to which they are capable, subject to reasonable regulation in order to conserve these resources and to provide and maintain conditions which are conducive to the development and use of water resources.

OCGA § 12-5-91.

For these reasons, the City's contention is unpersuasive. The EPD's analysis and decision to deny the City's application for a groundwater withdrawal permit complied with OCGA § 12-5-96 (d) as a matter of law.

2. The City next contends that the ALJ erred because the EPD should not have been permitted to consider whether there was an alternative water source currently available to the City when determining whether to grant or deny the groundwater withdrawal permit. We cannot agree.

---

OCGA § 12-5-96 (d). See also Ga. Comp. R. & Regs. r. 391-3-2-.05 (1) (implementing the Ground-water Use Act).

The EPD considered whether an alternative water source was available to the City as part of its consideration of "[t]he number of persons using an aquifer and the object, extent, and necessity of their respective withdrawals or uses," the first statutory factor listed under OCGA § 12-5-96 (d). The City argues that the word "necessity" in OCGA § 12-5-96 (d) (1) "does not refer to an applicant's need for water but refers to the nature or purpose of the applicant's use." Thus, under the City's interpretation of OCGA § 12-5-96 (d) (1), the EPD may not consider whether an applicant needs additional water in light of existing alternative water sources already available to the applicant.

The City's interpretation is contrary to the plain language of the statute. "[I]n construing [Georgia statutes], we apply the fundamental rules of statutory construction that require us to construe a statute according to its terms." (Citation and punctuation omitted.) *Inland Paperboard & Packaging v. Ga. Dept. of Revenue*, 274 Ga. App. 101 (616 SE2d 873) (2005). OCGA § 12-5-96 (d) (1) allows for consideration of the "necessity of [the] respective *withdrawals* or uses." (Emphasis supplied.) Furthermore, OCGA § 12-5-96 (d) (10) allows for consideration of "[a]ny other relevant factors," which would encompass consideration of an applicant's need for additional water and the availability of existing alternative water sources.

Nevertheless, the City contends that the EPD's decision to look to whether alternative water sources were available to the City as part of its consideration of OCGA § 12-5-96 (d) (1) contradicts the EPD's longstanding policy "to allow local jurisdictions to decide what source of water best suits the needs of each jurisdiction." Pretermitting whether the EPD would be bound by its previous "longstanding policy" in determining whether to grant the City an additional groundwater permit, we conclude after our own review of the administrative record that the City's contention that such a policy exists is unsupported by record evidence.[3] Under the Administrative Procedure Act, appellate review of an ALJ's decision is conducted without a jury and is confined to the evidence received by the ALJ. OCGA

---

[3] The City asserts that the EPD has issued, modified, or renewed various groundwater permits to Effingham County and Savannah even though both have alternative sources of water available. However, the record reflects that any comparison between the EPD's permitting decisions related to Effingham County, Savannah, and the City is misplaced. While the record shows that the EPD has permitted Effingham County to draw from a new well, the modified permit did not authorize *any change or increase* to the amount of groundwater the county could withdraw. Likewise, the City has not provided any citations to the record indicating that the EPD "has issued and renewed various groundwater permits to Savannah" authorizing it to change or increase the amount of water it could withdraw despite having an alternative water source available.

§ 50-13-19 (g); *Reheis v. Drexel Chem. Co.*, 237 Ga. App. 87, 88 (1) (514 SE2d 867) (1999); *Quarterman v. Edwards*, 169 Ga. App. 300, 301 (1) (312 SE2d 643) (1983). Given the absence of supporting evidence in the administrative record, the City's policy argument must fail.

3. The City argues that the ALJ's Final Decision was erroneous because the City's proposed withdrawal of groundwater would have no adverse effect on other users, was not contrary to the public interest, and should have been given priority over other applicants and users. We disagree.

(a) The City first contends that the ALJ's Final Decision was "clearly erroneous" because its proposed groundwater withdrawal will have no adverse effects on other users. However, even assuming that there would be no such adverse effects in this case, there is nothing in the statutory or regulatory scheme of the Ground-water Use Act that requires the EPD to grant an applicant's groundwater withdrawal permit when no adverse effect on other users is shown, under circumstances where there are other factors counseling against the grant of the permit.

The City's argument appears to be based on its conclusion that Ga. Comp. R. & Regs. r. 391-3-2-.06 (2) requires the EPD to grant a groundwater withdrawal permit for consumptive use whenever there is no showing that the permit would have an adverse effect on other users. The City, however, has misinterpreted this regulatory provision. Ga. Comp. R. & Regs. r. 391-3-2-.06 (2) provides that the EPD should grant a permit for consumptive use "when there are not unreasonable adverse effects on other water uses" *and* "based upon the consideration set forth in [Ga. Comp. R. & Regs. r.] 391-3-2-.05." Rule 391-3-2-.05 includes the same factors for consideration set forth in OCGA § 12-5-96 (d) that were discussed supra. Thus, the regulatory framework clearly allows the EPD to reject a permit application based upon its consideration of the factors set forth in OCGA § 12-5-96 (d) and incorporated into Ga. Comp. R. & Regs. r. 391-3-2-.05, separate and apart from the EPD's consideration of whether an adverse effect on other users has been shown. Thus, we find no merit in the City's argument.

(b) The City next argues that there was "no rational basis" for the ALJ's Final Decision "because the public interest is best served by having a safe and low-cost water supply source available to citizens," and the denial of its application for a groundwater withdrawal permit allegedly "force[s]" the City to purchase water at a more expensive rate from Effingham County rather than draw water from its own well at a less expensive rate. However, the City's argument is not persuasive. First, irrespective of whether the Consent Order should be construed as an agreement by the City to purchase water from Effingham County or simply as an agreement under which the City

has the *option* to make the purchase, the EPD is not "forcing" the City to act. Rather, the City itself agreed to the arrangement by voluntarily entering into the Consent Order. Second, even assuming that the City's contentions about its own costs are true, the EPD is entitled to weigh those costs against other public policy concerns that must be taken into account by the EPD, such as the need for conservation of limited water resources. See OCGA § 12-5-91.

(c) Finally, the City contends that the ALJ's decision was "contrary to law" because the Ground-water Use Act requires that water for human consumption be given priority over other uses, meaning that the City's application should have been given priority over applicants and current users who do not need the water for human consumption. In support of its argument, the City relies on OCGA §§ 12-5-102 (c) and 12-5-105 (b) (4). However, those provisions set forth a prioritization scheme that exists only in "emergency periods of water shortage," OCGA §§ 12-5-102 (c) and 12-5-105 (b) (4), and there is no evidence in the administrative record that an emergency situation exists in the instant case.

4. The City argues that the ALJ erred because the Consent Order allegedly will not satisfy the City's need for water, rendering erroneous the EPD's determination pursuant to OCGA § 12-5-96 (d) (1) that the City had no need for an additional groundwater withdrawal permit. The City further argues that the Consent Order itself is invalid for several reasons. We cannot agree with either of these arguments.

The ALJ found that the uncontroverted material facts of record establish that "if [the City] complies with its obligation under the Consent Order to connect with Effingham County's 36″ transmission line, [the City] will have all the water it needs for the foreseeable future without the need for further groundwater withdrawals"; that Effingham County's 36″ transmission line was designed to satisfy all the water needs of the County's residents, including those living in the City, for the next 50 years; and that, at a minimum, Effingham County could supply the City with 5.00 MGD of drinking water through its transmission line, which exceeded the City's total current and projected water needs. Our review of the administrative record leads us to conclude that the ALJ committed no legal error and correctly concluded that no genuine issue of material fact remains as to whether the City's current and projected water needs can be satisfied by carrying out the provisions of the Consent Order.

The City also attacks the Consent Order itself by arguing that it violates the City's home rule powers, violates its authority to operate its water system, violates a local government service delivery agreement, is not a valid intergovernmental contract, and exceeds the

authority of the EPD. These claims, however, are not properly before us. As we previously held in *Rincon I*:

> [T]he City could have challenged the EPD's decision under OCGA §§ 12-2-2 (c) and 50-13-19, but did not. OCGA § 12-5-186. Therefore, the EPD's decision became final, OCGA § 12-5-185; *Wade v. Harris*, [210 Ga. App. 882, 884 (1) (437 SE2d 863) (1993)], and the City is not entitled to collaterally attack the EPD's decision in these proceedings.

*Rincon I*, 272 Ga. App. at 413 (2). Furthermore, the City is precluded under res judicata principles from litigating these issues, which were raised or could have been raised in the prior litigation between the parties in *Rincon I*. See *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 865-866 (1) (463 SE2d 5) (1995) (discussing doctrine of res judicata).

5. The City further argues that the ALJ erred by failing to conclude that the EPD "abused its discretion" when it allegedly encouraged the City to install a Lower Floridan well but then denied the City's application to draw water from that source. We disagree.

Although the EPD was aware of the City's desire to drill a new well, the ALJ found that nothing in the administrative record shows that "any employee of the EPD affirmatively promised the [City] that it would be granted the water withdrawal permit in question." The City points to nothing in the administrative record that contradicts the ALJ's finding. We likewise have found nothing. Moreover, in essence, the City's argument is that the EPD should be equitably estopped from denying the City's new permit application, but equitable doctrines such as equitable estoppel are not normally available against a state agency. *State Soil & Water Conservation Comm. v. Stricklett*, 252 Ga. App. 430, 435 (2) (555 SE2d 800) (2001). Accordingly, we are unpersuaded by the City's argument.

6. The City contends the ALJ erred in considering and applying retroactively the EPD's "Clarification of the Interim Strategy for Permitting Lower Floridan Withdrawals in Coastal Georgia," dated January 30, 2004. We reject the City's contention. While the ALJ briefly mentioned the EPD's "Interim Strategy" document in the "Undisputed Material Facts" section of its Final Decision, its "Conclusions of Law" section, including its discussion of the "Pertinent Laws and Regulations," did not reference or discuss it. Furthermore, it is clear from a review of the ALJ's Final Decision that it did not predicate its legal analysis of the EPD's decision on the "Interim Strategy" document, but rather on the statutory and regulatory framework discussed supra. Thus, the City's reliance on *Recycle & Recover, Inc. v. Ga. Bd. of Natural Resources*, 266 Ga. 253 (466 SE2d

197) (1996), which deals with the constitutionality of legislation applied retroactively, is inapposite under the circumstances of this case.

7. Finally, the City argues that the ALJ's Final Decision was unconstitutional "because it deprives [the City] of due process of law, denies [the City] equal protection of the laws, and constitutes a taking of property without just compensation under the Georgia and federal constitutions." We find these arguments unavailing.

The City first attempted to raise its due process and equal protection claims in its appeal to the superior court. Rule 22 (3) of the Administrative Rules of Procedure states:

> Although the ALJ lacks jurisdiction to rule on constitutional claims, like all other claims, constitutional claims must be pled and supported in the Administrative court. Whenever any party raises issues under either the Georgia or United States Constitution, the sections of any laws or rules constitutionally challenged and any constitutional provisions such laws or rules are alleged to violate must be stated with specificity. In addition, an allegation of unconstitutionality must be supported by a statement either of the basis for the claim of unconstitutionality as a matter of law or of the facts under which the party alleges that the law or rule is unconstitutional as applied to the party.

Ga. Comp. R. & Regs. r. 616-1-2-.22 (3). Because the City failed to raise its due process and equal protection claims before the ALJ, the City has waived its ability to raise these claims before the superior court or this Court. See *Ga. Bd. of Dentistry v. Pence*, 223 Ga. App. 603, 607 (5) (478 SE2d 437) (1996).

As to the City's claim of an unconstitutional taking, the City has failed to present any specific factual or legal arguments on appeal as to why the denial of its groundwater withdrawal permit constituted the taking of its property without just compensation. Apparently, the City's claim is predicated on the same assertions of alleged wrongful action by the EPD that have been discussed and rejected in the prior divisions of this opinion. Thus, we find no merit in the City's claim.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 29, 2005.

*Epstein, Becker & Green, Barbara H. Gallo, Daniel H. Sherman IV, Kerry A. Nelson*, for appellant.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Assistant Attorney General, Per B. Normark, John E. Hennelly, Assistant Attorneys General, Jennifer L. Pennington, Lawrence D. Sanders, Lisa B. Perlstein, Mary Maclean Doolan Asbill,* for appellees.