**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 7, 2020**

# In the Court of Appeals of Georgia

A19A2203, A19A2225. UNITED CEREBRAL PALSY OF GEORGIA, INC. et al. v. GEORGIA DEPARTMENT OF BEHAVIORAL HEALTH AND DEVELOPMENTAL DISABILITIES et al.

BARNES, Presiding Judge.

Following the grant of their application for discretionary review, United Cerebral Palsy of Georgia, Inc., Coastal Center for Developmental Services, Inc. DBA Employability, Hope Haven of Northeast Georgia, Inc., and Creative Community Services, Inc. appeal the superior court's order affirming the final administrative decision reached by the Commissioner of the Georgia Department of Community Health ("DCH") in this dispute over Medicaid reimbursements to service

providers.[1] In the same order, the superior court dismissed the plaintiffs' related putative class action brought against the DCH, the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD"), and the commissioners of those two agencies in their official capacities on the ground that the plaintiffs failed to exhaust their administrative remedies, and the plaintiffs also challenge that ruling on appeal. For the reasons discussed more fully below, we vacate the superior court's order in so far as it affirmed the DCH Commissioner's final agency decision, and we remand with direction that the superior court vacate the final agency decision and remand the case to the Commissioner for further action consistent with this opinion. We affirm the superior court's order in so far as it dismissed the plaintiffs' putative class action.

*Overview of the Medicaid Program.* Medicaid is a joint federal-state program in which the federal government subsidizes the states to provide medical assistance to certain individuals in need. See *UCP II*, 298 Ga. at 780 (1) (a); *Cook v. Glover*, 295

_____

[1] This case has previously been before this Court and our Supreme Court. See *Ga. Dept. of Behavioral Health & Developmental Disabilities v. United Cerebral Palsy of Ga.*, 298 Ga. 779 (784 SE2d 781) (2016) ("*UCP II*"); *United Cerebral Palsy of Ga. v. Ga. Dept. of Behavioral Health & Developmental Disabilities*, 331 Ga. App. 616 (771 SE2d 251) (2015) (physical precedent only) ("*UCP I*"), rev'd, 298 Ga. 779 (2016), and vacated, 339 Ga. App. 894 (2016).

2

Ga. 495, 496 (761 SE2d 267) (2014). State participation in the Medicaid program is voluntary, but once a state chooses to join, it must comply with federal statutory and regulatory requirements. See *Wilder v. Va. Hosp. Assn.*, 496 U.S. 498, 502 (I) (A) (110 SCt 2510, 110 LE2d 455) (1990); *UCP II*, 298 Ga. at 780 (1) (a). Georgia has elected to participate in the Medicaid program, and the DCH is the state agency responsible for administering the state's Medicaid plan. See OCGA § 49-4-142 (a); *Cook*, 295 Ga. at 496.

With federal approval, states can obtain waivers that exempt them from certain federal mandates that otherwise would attach to the provision of Medicaid funds. See 42 USC § 1396n (b); *UCP II*, 298 Ga. at 780 (1) (a). At issue in this case are two Medicaid waiver programs instituted in Georgia that were approved by the federal government in 2007, the New Options Waiver Program ("NOW") and the Comprehensive Supports Waiver Program ("COMP"). See *UCP II*, 298 Ga. at 780 (1) (a). The two waiver programs permit Medicaid funds to be used for providing services to Medicaid recipients with intellectual and developmental disabilities in home or community-based settings rather than in institutions. See *UCP II*, 298 Ga. at 780 (1) (a). The requirements of the two waiver programs are incorporated into the

3

contracts, known as statements of participation, entered between the DBHDD[2] and the providers of Medicaid services to individuals with intellectual and developmental disabilities. Id. Under the provisions of the waiver programs, the statements of participation, and the DCH's Medicaid policy manuals, Medicaid providers are entitled to certain reimbursement rates for their services.

*Administrative Review and Administrative Hearings.* When there is a dispute over reimbursements to Medicaid service providers, "[t]he General Assembly has recognized the need for a robust formal administrative review process to address [the providers'] complaints." *UCP II*, 298 Ga. 781 (1) (b). In this regard, OCGA § 49-4-153 (b) (2) (A) and (B)[3] provide that any Medicaid provider aggrieved by "a decision

---

[2] The DBHDD is the state administrative agency charged with establishing, administering, and supervising "state programs for mental health, developmental disabilities, and addictive diseases." OCGA § 37-1-20 (1).

[3] OCGA § 49-4-153 (b) (2) (A) and (B) provide:

(2)(A) A provider of medical assistance may request a hearing on a decision of the Department of Community Health with respect to a denial or nonpayment of or the determination of the amount of reimbursement paid or payable to such provider on a certain item of medical or remedial care of service rendered by such provider by filing a written request for a hearing in accordance with Code Sections 50-13-13 and 50-13-15 with the Department of Community Health. The Department of Community Health shall, within 15 business days of receiving the request for hearing from the provider, transmit a copy of the provider's request for hearing to the Office of State Administrative

4

of the [DCH] with respect to a denial or nonpayment of or the determination of the amount of reimbursement paid or payable to such provider on a certain item of medical or remedial care of service rendered by such provider" may obtain a hearing before an administrative law judge ("ALJ") from the Office of State Administrative Hearings ("OSAH") by filing a proper written request with the DCH. See *UCP II*, 298 Ga. at 781-782 (1) (b). The ALJ's decision may be appealed by the losing party to the DCH Commissioner (or his or her designated representative) for a final agency

Hearings. The provider's request for hearing shall identify the issues under appeal and specify the relief requested by the provider. The request for hearing shall be filed no later than 15 business days after the provider of medical assistance receives the decision of the Department of Community Health which is the basis for the appeal.

(B) The Office of State Administrative Hearings shall assign an administrative law judge to hear the dispute within 15 days after receiving the request. The hearing is required to commence no later than 90 days after the assignment of the case to an administrative law judge, and the administrative law judge shall issue a written decision on the matter no later than 30 days after the close of the record except when it is determined that the complexity of the issues and the length of the record require an extension of these periods and an order is issued by an administrative law judge so providing, but no longer than 30 days. Such time requirements can be extended by written consent of all the parties. Failure of the administrative law judge to comply with the above time deadlines shall not render the case moot.

5

decision, see OCGA § 49-4-153 (b) (2) (D),[4] and a provider aggrieved by the final

agency decision then may petition for review in the appropriate superior court. See

OCGA §§ 49-4-153 (c);[5] *UCP II*, 298 Ga. at 783-785 (1) (b).

The DCH is authorized to establish regulations regarding the manner in which

the administrative review process is conducted under OCGA § 49-4-153 (b), see

OCGA § 49-4-153 (a), and the DCH has established such regulations. See Ga. Comp.

R. and Regs. r. 350-4-.01 to 350-4-.30 (the "Rules" or "Rule").[6] The DCH also has

---

[4] OCGA § 49-4-153 (b) (2) (D) provides:
Should the decision of the administrative law judge be adverse to a party and should a party desire to appeal that decision, the party must file a request therefor, in writing, with the commissioner within ten days of his or her receipt of the hearing decision. Such a request must enumerate all factual and legal errors alleged by the party. The commissioner, or the commissioner's designated representative, may affirm, modify, or reverse the decision appealed from.

[5] OCGA § 49-4-153 (c) provides in part:
If any aggrieved party exhausts all the administrative remedies provided in this Code section, judicial review of the final decision of the commissioner may be obtained by filing a petition within 30 days after the service of the final decision of the commissioner or, if a rehearing is requested, within 30 days after the decision thereon. The petition may be filed in the Superior Court of Fulton County or in the superior court of the county of residence of the petitioner. . . .

[6] The Rules refer to the Department of Medical Assistance, which was the former name of the DCH. See *Perkins v. Dept. of Medical Assistance*, 252 Ga. App. 35, 36, n. 1 (555 SE2d 500) (2001).

issued a Medicaid manual that sets out the deadlines and procedures for administrative proceedings. See DCH, Division of Medicaid, Part I, Policies and Procedures for Medicaid/PeachCare for Kids (the "Medicaid Procedures Manual").

The DCH Rules and Medicaid Procedures Manual establish more than one path that a service provider can pursue to obtain an administrative remedy. For example, Rule 350-4-.04[7] states that when the DCH proposes to take an "adverse action" against a provider, the DCH first "shall offer" the provider an opportunity for administrative review "prior to implementation of the proposed action." An "adverse action" includes circumstances where the DCH "denies or reduces the amount of reimbursement claimed by a provider" or "sets or changes a provider's reimbursement

---

[7] Rule 350-4-.04 provides:

The Department shall offer the opportunity for Administrative Review to any provider against whom it proposes to take an adverse action unless the Department is otherwise authorized by law to take such action without opportunity for appeal by the provider prior to the action's implementation. The procedures and deadlines for obtaining such Administrative Review and the deadlines for decisions thereon shall be published in the Policies and Procedures Manual for each service category to which they apply. Administrative Review shall be completed, if not waived by the provider, prior to implementation of the proposed action. Whenever the opportunity for Administrative Review is available to the provider, such Administrative Review must be timely obtained and completed for the provider to be entitled to a hearing.

7

rate." Medicaid Procedures Manual, p. 9 (¶4). If the provider is aggrieved by the result of that administrative review, the provider then can seek an administrative hearing before an ALJ. Rule 350-4-.04; 350-4-.05 (1) (b) (2). The deadlines and procedures for obtaining administrative review of a proposed adverse action followed by an administrative hearing before an ALJ are set out in Sections 505-506 of the Medicaid Procedures Manual.

Separate from the administrative review process under Rule 350-4-.04 for proposed adverse actions by the DCH, a provider can request an administrative hearing before an ALJ to challenge the "denial of, or the determination of the amount" of payment to the provider "on a certain item of medical or remedial care or service rendered by such provider." Rule 350-4-.01 (1) (a). To obtain a hearing before an ALJ where the provider wishes to contest the denial of a specific payment, the provider first must request an "initial review" of the claim through the DCH's web portal, the Georgia Medicaid Management Information System (the "GAMMIS Web Portal"), within 30 days of the denial of the requested claim payment. See Medicaid Procedures Manual §§ 207, 502. Each request for an initial review of a denied payment must be submitted on a separate form through the GAMMIS Web Portal. See id. § 502. If the DCH's initial review finds against the provider on the payment claim,

8

the provider may request an administrative review by the DCH, and if unsatisfied with the administrative review determination, can then pursue an administrative hearing before an ALJ. See id. §§ 502, 505-506.

*The Prior Lawsuit.* The plaintiffs in this case are nonprofit corporations that provide services to Georgia Medicaid patients with intellectual and developmental disabilities under the COMP and/or NOW waiver programs. In August 2013, the plaintiffs filed in the Superior Court of Fulton County a putative class action against the DCH, the DBHDD, and those two agencies' commissioners in their official capacities.[8] Among other things, the complaint alleged that since 2008, the defendants have used "various unapproved and secretive methods," including the use of an undisclosed algorithm, to reduce the reimbursements rates paid to providers and to limit the amount of services that Medicaid recipients can receive. According to the complaint, the defendants made these reductions in reimbursements and services without public notice and comment as required by federal and state law and without giving providers advanced notice of the changes as required by the statements of participation, federal and state law, and constitutional due process. The complaint

_____

[8] Four individuals who received Medicaid services and their family representatives also were named plaintiffs. Those individuals are not named plaintiffs in the current lawsuit.

9

sought declaratory and injunctive relief, damages, and attorney fees and expenses for alleged breach of contract, violations of the plaintiffs' rights to administrative remedies, and violations of their constitutional rights. The plaintiffs did not pursue the DCH's administrative review process before filing their lawsuit in superior court. See *UCP II*, 298 Ga. at 786 (1) (c).

The superior court dismissed the plaintiffs' complaint for failure to exhaust administrative remedies before the DCH. This Court reversed the superior court, concluding that the defendants' failure to give the plaintiffs written notice of their proposed adverse action of denying or reducing service providers' reimbursements as required by Medicaid Procedures Manual § 505 and the applicable Rules excused the plaintiffs from their failure to exhaust administrative remedies. See *UCP I*, 331 Ga. App. at 621-622 (3). However, our Supreme Court granted certiorari and reversed the decision of this Court, determining that the plaintiffs first had to pursue their claim of defective notice and their substantive claims through the DCH's administrative review process established by OCGA § 49-4-153 and the Rules. See *UCP II*, 298 Ga. at 790-791 (2) (c). In so ruling, the Supreme Court explained:

> The plaintiffs devote much of their briefs to arguing the merits of whether they got proper notice of the allegedly invalid agency actions

10

and decisions, asserting that until they did, they could not start the administrative review process established by OCGA § 49-4-153. But the plaintiffs clearly had actual notice of the actions and decisions they dispute by the time they filed their complaint disputing these matters in August 2013. The question is whether at that point they could file their complaint in court and bypass the administrative review process. Allowing them to do so would require courts to decide both the notice issues and the underlying substantive issues in the first instance. Administrative law commits both sets of issues to the administrative process in the first instance.

Id. at 790 (2) (c). The Supreme Court pointed to "three basic possible outcomes (which might vary with regard to particular claims and claimants)" once the issue of defective notice and the plaintiffs' substantive claims were properly presented to the DCH with a demand for hearing before an ALJ:

> (1) a ruling that no notice of adverse action was required, because there was no change in the rates of reimbursement or amount of services allowed; (2) a ruling that notice was properly given earlier and a consequent dismissal of the underlying substantive claims as untimely; or (3) a ruling that notice was not properly given and a corresponding ruling about whether the untimeliness of the substantive claims can and should be excused (or proper notice ordered to be given now) as a matter of contractual, regulatory, statutory, or constitutional law. If the ALJ reached the plaintiffs' substantive claims and found them to be

11

meritorious, the ALJ could craft appropriate remedies based on the judge's expertise with the Medicaid statutes and rules.

Id. at 790 (2) (c). The Supreme Court further noted that if the plaintiffs were unsatisfied with the ALJ's ruling, they could seek review by the DCH Commissioner, and then, if still unsatisfied, they could pursue judicial review. Id. at 790-791 (2) (c).

*The Administrative Proceedings*. In January 2017, the Superior Court entered a judgment on remittitur dismissing the plaintiffs' lawsuit. A few days later, each of the plaintiffs served the DCH with a written request for an administrative review and hearing that included the allegations of defective notice and the substantive legal claims raised in the prior lawsuit against the defendants. Among other things, the plaintiffs asserted that because the defendants failed to provide the required written notification of their proposed adverse action of denying or reducing the amount of service providers' reimbursements, "any deadlines for Administrative Review or Administrative Hearing have not begun and/or are tolled." The plaintiffs also requested that the defendants be ordered to correct the defective notice by now providing proper written notification of their adverse action to the plaintiffs, and they attached a proposed order to that effect.

12

In addition to delivering their written request for administrative review and hearing by hand delivery and certified mail, each plaintiff also inputted an individual disputed payment claim through the GAMMIS Web Portal. Those four payment claims had originally been paid by DCH on October 25, 2010, February 21, 2011, February 28, 2011, and December 17, 2012, respectively. Each plaintiff wrote in the "Comments" field on the GAMMIS Web Portal that the individual claim that it had electronically inputted was intended to be representative and that the full breadth of the plaintiffs' claims against the defendants were set out in their written request for an administrative review and hearing that had been delivered to the DCH.

The DCH denied the plaintiffs' requests for administrative review, after which each plaintiff submitted a petition for administrative hearing before an ALJ. The DCH subsequently referred the matter to the OSAH, and the ALJ assigned to the matter consolidated the plaintiffs' petitions. See Rule 350-4.22 (1).[9] The plaintiffs then filed

[9] Rule 350-4-.22 (1) provides:
> When two or more providers appeal matters involving common issues of law or fact, the appeals may be consolidated by the Department or by the appointed Administrative Law Judge(s) and heard together if it appears that a joint hearing would serve to expedite or simplify consideration of those issues and that no party would be prejudiced thereby.

a consolidated petition for administrative hearing that reiterated their claims of defective notice and their substantive claims against the defendants.

The defendants filed an answer in which they admitted that they used an algorithm to determine individual budget allocations to Medicaid service providers but otherwise denied the plaintiffs' claims. The defendants thereafter filed a motion for summary determination, asserting that the issues for determination could be resolved as a matter of law by the ALJ without need of an administrative hearing. See Rule 350-4-.26.[10] In their statement of "Undisputed Material Facts Related to the Four

---

[10] Rule 350-4-.26 provides in pertinent part:

(1) Any party may move, if supported by affidavits or other probative evidence, for a summary determination in its favor upon any of the issues being adjudicated on the basis that there is no genuine issue of material fact for determination. . . .

(2) When a motion for summary determination is made and supported as provided in this Rule, a party opposing the motion may file and serve a response or a countermotion. The respondent may not rest upon mere allegations or denials, but must show, by affidavit or other probative evidence, that there is a genuine issue of material fact for determination in the hearing.

. . .

(4) If all factual issues are decided by summary adjudication, no hearing will be held and the Administrative Law Judge shall prepare a decision. . . .

See Rule 350-4-.06 (b) ("The Administrative Law Judge may dismiss a request for a hearing for the following reasons: . . . there is no genuine issue of law or fact which requires a hearing determination."); Rule 616-1-2-.15 (addressing summary determination before ALJs). See also *Piedmont Healthcare v. Ga. Dept. of Human*

14

Claims," the defendants asserted that the four individual disputed claims that the plaintiffs inputted on the GAMMIS Web Portal had been "paid in full" as originally submitted by the plaintiffs for payment in 2010-2012 based on the standard rates set forth in the relevant Medicaid manual for COMP payments. In the legal argument section of their motion, the defendants then asserted that summary determination was appropriate on two grounds. First, the defendants asserted that the only claims properly before the ALJ were the four individual disputed payment claims because those were the only claims inputted by the plaintiffs on the GAMMIS Web Portal in accordance with Medical Procedures Manual § 502. Second, the defendants asserted that any challenge to the four individual payments was time-barred because the Georgia Supreme Court's decision in *UCP II*, 298 Ga. at 790 (2) (c), reflected as a matter of law that the plaintiffs had actual notice of the actions and decisions they disputed by no later than August 2013 when they filed their prior lawsuit, yet the plaintiffs waited until 2017 to contest any payments before the DCH instead of

_____

*Resources*, 282 Ga. App. 302, 304-305 (1) (638 SE2d 447) (2006) (noting that the grant of summary determination is "similar to a summary judgment" and that if an "issue is proper for summary adjudication, [the ALJ] is not required to hold a hearing").

15

utilizing the procedure for initial review of disputed claims set forth in Medicaid Procedures Manual § 502.

Opposing the motion for summary determination, the plaintiffs responded that their claims were not limited to the four individual disputed payments that they had inputted through the GAMMIS Web Portal. Rather, the plaintiffs asserted, they had submitted a request for administrative review and hearing that sought review more broadly of all of the plaintiffs' claims of Medicaid reimbursements being miscalculated or underpaid from 2008 to the present as a result of the defendants' undisclosed algorithm. The plaintiffs further asserted that having been deprived of the required written notice of the defendants' proposed adverse actions pertaining to the implementation of the algorithm, "fundamental fairness, due process, Georgia law, and the parties' contracts" required that the plaintiffs now be afforded an opportunity to be heard on their broad substantive claims rather than be shoehorned into the more narrow procedural framework for disputing individual payment claims through the GAMMIS Web Portal. According to the plaintiffs, they were entitled to full administrative review and their claims were not untimely in light of the "secretive nature" of the defendants' "unlawful scheme" that required "*years* of research and investigation to piece together the facts" now alleged by the plaintiffs. (Emphasis in

16

original.) Additionally, the plaintiffs asserted that even if the four individual claims inputted through the GAMMIS Web Portal were originally paid at the maximum approved rates, the defendants' use of the undisclosed algorithm nevertheless "caused those payments to be less than what they should be" by, for example, preventing the providers from billing for certain services.

The ALJ subsequently entered its initial decision granting the defendants' motion for summary determination. In its section entitled "Undisputed Material Facts," the ALJ found that each plaintiff had inputted a single disputed payment claim through the GAMMIS Web Portal, and that each claim had been "paid in full" as submitted in 2010-2012 based on the "standard rate set forth" in the DCH's Medicaid manual for COMP payments. In its "Conclusions of Law," the ALJ, relying on Medicaid Procedures Manual § 502, concluded that a service provider wishing to contest the payment of a claim must do so via the GAMMIS Web Portal within 30 days of the date of the denial of the payment. The ALJ went on to state:

> In its March 25, 2016 decision, the Georgia Supreme Court unanimously held that [the plaintiffs] in this case "clearly had actual notice of the actions and decisions they dispute by the time they filed their complaint disputing these matters in August 2013." [*UCP II*,] 290 Ga. at 790 [(2) (c)]. Consequently, whether [the plaintiffs] received written notice from

17

[the defendants] or not is irrelevant. They had actual knowledge of [the defendants'] action at least by August 2013.

The ALJ then concluded that once the plaintiffs had actual notice, they "then had thirty (30) days to contest the [DCH's] decision – an action which must take place via the [DCH's] GAMMIS system." Because the plaintiffs waited until 2017 to contest any payments through the GAMMIS Web Portal, the ALJ concluded that the plaintiffs' claims were barred for failing "to comply with the filing time-periods noted above."

The plaintiffs appealed the initial decision of the ALJ to the DCH Commissioner. The DCH Commissioner, through a designated representative, entered a final agency decision incorporating the findings of fact and conclusions of law of the ALJ and affirming the ALJ's initial decision.[11]

*The Current Lawsuit.* In March 2018, the plaintiffs filed their "Class Action Complaint or, in the Alternative, Petition for Judicial Review of Commissioner's Decision" in the Superior Court of Fulton County. The plaintiffs' putative class action complaint contained the same factual allegations as in the prior lawsuit as well as

---

[11] For ease of reference, we will hereafter refer to the findings of fact and conclusions of law as being those of the "Commissioner" without separate reference to the ALJ.

18

claims for breach of contract and violation of their constitutional rights, but the complaint also asserted that the administrative proceedings had demonstrated that further agency review would be futile and that the DCH's administrative procedures were inadequate to provide the broad relief requested by the plaintiffs. Alternatively, the plaintiff sought judicial review of the Commissioner's final agency decision.

The defendants filed a motion to dismiss the plaintiffs' putative class action complaint and opposed the plaintiffs' petition for judicial review of the Commissioner's final agency decision. Subsequently, the superior court entered its order granting the defendants' motion to dismiss the plaintiffs' putative class action complaint for failure to exhaust administrative remedies and affirming the Commissioner's final agency decision. Among other things, the superior court concluded that the only process for administrative review now available to the plaintiffs was the one specified by Medicaid Procedures Manual § 502, which provides for the review of the denial of individual payment claims through the GAMMIS Web Portal. In this regard, the superior court rejected the plaintiffs' argument that "administrative review should have occurred in the same manner as if they had been provided prior notice of adverse action," reasoning that the administrative review process afforded by Medicaid Procedures Manual § 505 for

proposed adverse actions by the DCH "does not contemplate looking backwards at past conduct." The superior court further concluded that the plaintiffs had failed to come forward with any evidence in the administrative proceeding reflecting that they had been denied or underpaid any reimbursements, and thus had failed to show any "adverse action" by the defendants for which they would have been entitled to receive advanced written notice. In reaching this conclusion, the superior court noted that the Commissioner's findings of fact included findings that the four individual payment claims inputted by the plaintiffs via the GAMMIS Web Portal had been paid in full as submitted under the standard rate set forth in the Medicaid manual for COMP payments. And given the Commissioner's "finding that the claims were paid in full as required by the applicable Medicaid manual," the superior court ruled that it was "irrelevant" whether the Commissioner erred when it determined that the plaintiffs' claims were untimely.

The plaintiffs now appeal from the rulings of the superior court.

1. In several related enumerations of error, the plaintiffs contend that the superior court erred in affirming the Commissioner's final agency decision granting summary determination to the defendants on their petition for administrative review and hearing.

20

Under Georgia's Administrative Procedure Act, [OCGA § 50-13-1 et seq.,] parties aggrieved by an agency's final decision are entitled to judicial review in superior court. The review shall be conducted by the court without a jury and shall be confined to the record and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact and may affirm the decision of the agency or remand the case for further proceedings. The reviewing court may reverse or modify the agency's decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

(Footnotes and punctuation omitted.) *UHS of Anchor v. Ga. Dept. of Community Health*, 351 Ga. App. 29, 31-32 (1) (830 SE2d 413) (2019). See OCGA § 50-13-19; *Central Ga. Elec. Membership Corp. v. Ga. Pub. Svc. Comm.*, 351 Ga. App. 69, 71 (830 SE2d 459) (2019). "When reviewing the affirmance of an administrative agency decision, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) *City of Rincon v. Couch*, 276 Ga. App.

567, 568 (623 SE2d 754) (2005). And when the final agency decision at issue is the grant of summary determination, we review the law and the evidence de novo. See *Piedmont Healthcare*, 282 Ga. App. at 303, 305 (1) (applying de novo standard of review where ALJ granted summary determination and agency entered final administrative decision affirming ALJ's decision); *Children's Hosp. of Pittsburgh v. Ga. Dept. of Medical Assistance*, 235 Ga. App. 697, 700 (1) (509 SE2d 725) (1998) (same).

Guided by these principles, we turn to the arguments raised by the plaintiffs in this appeal. Among other things, the plaintiffs argue that the superior court erred in affirming the Commissioner's final agency decision because the Commissioner erroneously concluded that the plaintiff's written notice argument was "irrelevant." According to the plaintiffs, the Commissioner acted in an arbitrary and capricious manner by ignoring "the clear direction of the Supreme Court to determine whether notice was properly given."

The lynchpin of the plaintiffs' claims in the prior lawsuit and the administrative proceedings was that the defendants failed to give them advanced written notice of the proposed adverse action of implementing the algorithm to calculate reimbursements as required by Rule 350-4-.04 and Medicaid Procedures Manual §

22

505. Based on the defendants' alleged failure to give such required notice, the plaintiffs argued in the administrative proceedings that relief should be fashioned by the DCH that now affords them the opportunity to broadly challenge the implementation of the algorithm to reduce reimbursements from 2008 to the present, rather than being restricted to the review process for the denial of individual payment claims through the GAMMIS Web Portal as contemplated by Medicaid Procedures Manual § 502. Thus, whether the plaintiffs were entitled to, but failed to receive, advanced written notice of the defendants' implementation of the algorithm to calculate reimbursements went to the core of the dispute in this case.

The Commissioner, however, sidestepped the written notice issue by emphasizing that the Supreme Court stated in *UCP II*, 298 Ga. at 790 (2) (c), that the plaintiffs had actual notice by August 2013, and then by concluding that the plaintiffs' claims were time-barred based on actual notice. But the Supreme Court clearly did not intend for its statement regarding actual notice to supplant the legal analysis undertaken by the Commissioner. Indeed, as previously noted, in laying out a roadmap for the administrative proceedings, the Supreme Court in *UCP II*, 298 Ga. at 790 (2) (c), identified "three possible outcomes," which centered on resolving whether written notice of adverse action was required, whether such notice was given,

23

and if not, "whether the untimeliness of the substantive claims can and should be excused (or proper notice ordered to be given now) as a matter of contractual, regulatory, statutory, or constitutional law." Furthermore, the Commissioner did not explain why actual versus written notice would have triggered any of the time deadlines set forth in the Medicaid Procedures Manual, including the 30-day deadline imposed by Medicaid Procedures Manual § 502 for the DCH's denial of a payment. Nor did the Commissioner explain why actual notice *after* the defendants' implementation of the algorithm would cure the defendants' failure to provide *advanced* written notice of the proposed implementation of the algorithm and the opportunity at that point to obtain administrative review under Rule 350-4-.04 and Medicaid Procedures Manual § 505, rather than the narrower review of each individual payment submitted through the GAMMIS Web Portal afforded by Rule 350-4-.01 (1) (a) and Medicaid Procedures Manual § 502.

Appellate courts can order that an administrative final decision be vacated and the case remanded to the agency if further clarification is needed before the agency's decision can be properly reviewed under OCGA § 50-13-19. See *Cobb County School Dist. v. Barker*, 271 Ga. 35, 40 (3) (518 SE2d 126) (1999); *Subsequent Injury Trust Fund v. Knight-Ridder Newspapers-Macon Telegraph & News*, 207 Ga. App. 368,

24

369 (427 SE2d 844) (1993). Accordingly, because the DCH Commissioner did not address the plaintiffs' central argument regarding written advance notice of an adverse action and did not fully explain the rationale for its decision based on actual notice, we vacate the superior court's order in so far as it affirmed the final agency decision with direction that the final agency decision be vacated and the case remanded to the Commissioner for further clarification. See *Cobb County School Dist.*, 271 Ga. at 40 (3); *Subsequent Injury Trust Fund*, 207 Ga. App. at 369. Cf. *Lamar Co. v. Whiteway Neon-Ad*, 303 Ga. App. 495, 499 (693 SE2d 848) (2010) (agency decision was arbitrary and capricious when agency did not address principle issue that was to be resolved in the administrative proceedings).

In reaching this conclusion, we note that in affirming the Commissioner's final agency decision, the superior court ruled that the administrative review afforded by Rule 350-4-.04 and Medicaid Procedures Manual § 505 for proposed adverse actions was no longer available even if the defendants failed to comply with the advanced written notice requirement, and that, in addition, the plaintiffs failed to come forward with evidence in response to the motion for summary determination that there had been an "adverse action" requiring advanced notice. However, the Commissioner did not address whether the administrative review afforded by Rule 350-4-.04 and

25

Medicaid Procedures Manual § 505 could be pursued when a provider fails to receive the required advanced notice of an adverse action from the DCH. Nor did the Commissioner make a determination that there had been no "adverse action" requiring advanced notice as that term is used in the applicable regulations and Medicaid Procedures Manual. Resolving these questions involves agency expertise and thus must be decided in the first instance in the administrative process rather than on appeal in the superior court. See *UCP II*, 298 Ga. at 789 (2) (b) (noting that the "complex administrative decisions" involved in cases such as this one "are clearly within the purview of administrative review, and executive agencies are entitled to apply their expertise to obtain uniformity of results by deciding such questions in the first instance"); *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 159 (2) (664 SE2d 223) (2008) (noting judicial deference that should be afforded an "agency's interpretation of statutes it is charged with enforcing or administering and the agency's interpretation of rules and regulations it has enacted to fulfill the function given it by the legislative branch"). Furthermore, the defendants did not move for summary determination on the ground that there had been no "adverse action" requiring advanced notice; instead, they expressly stated that they were seeking summary determination on whether the plaintiffs were limited to contesting

26

the four payment claims inputted on the GAMMIS Web Portal and whether those claims were untimely. Consequently, the Commissioner's final agency decision could not be affirmed on the alternative grounds articulated by the superior court. See id. Cf. *Dennis v. First Nat. Bank of the South*, 293 Ga. App. 890, 890 (668 SE2d 479) (2008) (noting that reviewing courts generally should not "affirm the grant of summary judgment on a ground not raised below") (citation and punctuation omitted).

2. The plaintiffs contend that the superior court erred in dismissing their putative class action complaint for failure to exhaust administrative remedies. We disagree.

"Where, as here, exhaustion of administrative remedies is a precondition for suit, the satisfaction of this requirement by the class plaintiff normally will avoid the necessity for each class member to satisfy this requirement individually." (Citation and punctuation omitted.) *Barnes v. City of Atlanta*, 281 Ga. 256, 258 (1) (637 SE2d 4) (2006). See *UCP II*, 298 Ga. at 789 (2) (b), n.6. However, in light of our decision supra in Division 1, the administrative process with respect to the plaintiffs (the putative class representatives) is not complete. Hence, administrative remedies have not yet been exhausted, and the superior court properly dismissed the plaintiffs' putative class action complaint. See *Perkins*, 252 Ga. App. at 37-38 (1), 38 (3)

27

(concluding that it was proper to dismiss putative class action where claims of both representative plaintiffs were subject to dismissal, including claims against one of the representative plaintiffs for failure to exhaust administrative remedies).[12]

*Judgment affirmed in part and vacated in part, and case remanded with direction. Mercier and Brown, JJ., concur.*

---

[12] Given our decision in Division 2 that dismissal was appropriate on the basis that administrative remedies have not been exhausted, we need not decide whether, apart from the exhaustion requirement, the plaintiffs were entitled to simultaneously pursue in the superior court both the petition for judicial review of the DCH Commissioner's final agency decision and the putative class action. See *State Health Planning Agency v. Coastal Empire Rehabilitation Hosp.*, 261 Ga. 832, 832 (412 SE2d 532) (1992) (party could not simultaneously appeal administrative decision in superior court and file a declaratory judgment action against the agency).