**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 12, 2023**

# In the Court of Appeals of Georgia

A23A0857. COLUMBUS WATER WORKS v. DUNN, et al.

RICKMAN, Judge.

In this dispute over Columbus Water Works's most recent National Pollutant Discharge Elimination System ("NPDES") permit, Columbus appeals from the superior court's order affirming an administrative law judge's ("ALJ") decision to grant summary determination to Richard Dunn in his capacity as the director of the Environmental Protection Division ("EPD") of the Georgia Department of Natural Resources. Columbus contends, inter alia, that the ALJ erred by granting summary determination, and the superior court erred by affirming the ALJ, despite a genuine issue about material facts. For the following reasons, we reverse the superior court's judgment and remand the case with direction.

The record shows that Columbus operates a combined sewer system which uses a single set of pipes to transport both stormwater and sanitary wastewater to treatment facilities. Because wet weather events may result in storm surges that exceed the capacity of the treatment facilities, the system was designed to include relief outlets, or combined sewer overflows ("CSO"), that discharge into the Chattahoochee River. In the early 1990s, Columbus overhauled its combined sewer system and spent more than $100 million to design and construct a new treatment system pursuant to a long-term control plan approved by the EPD.

In 1998, the EPD issued a NPDES permit to Columbus which allowed it to discharge water into the river. The NPDES permit was reissued in 2010. In 2020, the EPD issued the most recent permit, which imposed new limits for fecal coliform bacteria and total residual chlorine.

Columbus filed a petition for hearing, which it later amended, challenging the new provisions in the 2020 permit before the Office of State Administrative Hearings. Chattahoochee Riverkeeper, an environmental organization, intervened. Columbus subsequently filed a motion for summary judgment as to Count I of its amended petition, which challenged the new limit on fecal coliform. The EPD moved to

2

dismiss the amended petition in part and for summary determination. Following oral argument, the ALJ granted summary determination to the EPD.

Columbus then petitioned the superior court for judicial review, and the superior court affirmed the decision of the ALJ. This Court granted Columbus's application for discretionary review, and this appeal followed.

"When reviewing the affirmance of an administrative agency decision, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) *City of Rincon v. Couch*, 276 Ga. App. 567, 568 (623 SE2d 754) (2005). In this case, the ALJ's decision constituted the final agency decision for purposes of judicial review. See OCGA § 12-2-2 (c) (2) (D); Ga. Comp. R. & Regs., r. 391-1-2-.08. "When the final administrative decision at issue is an ALJ's grant of summary determination, we review de novo the law and evidence." *Couch*, 276 Ga. App. at 568.

1. Columbus contends that the ALJ erred by granting summary determination despite a genuine dispute about material facts, including whether the Columbus CSO has a "reasonable potential" to cause or contribute to a water quality excursion. We agree.

"A party may move, based on supporting affidavits or other probative evidence, for summary determination in its favor on any of the issues being adjudicated, on the basis that there is no genuine issue of material fact for determination and the moving party is entitled to prevail as a matter of law." Ga. Comp. R. & Regs., r. 616-1-2-.15 (1). A party opposing summary determination "may not rest upon mere allegations or denials, but must show, by affidavit or other probative evidence . . . , that there is a genuine issue of material fact for determination, or that the moving party is not entitled to prevail as a matter of law." Ga. Comp. R. & Regs., r. 616-1-2-.15 (2) (c).

Under the Federal Clean Water Act, individual states are permitted to enact and administer their own water quality programs, subject to certain federal minimum standards. See 33 USC § 1313; *Upper Chattahoochee Riverkeeper v. Forsyth County*, 318 Ga. App. 499, 502 (1) (734 SE2d 242) (2012). The Georgia Water Quality Control Act, OCGA § 12-5-20 et seq., requires any person operating a facility that discharges a pollutant from a point source into the waters of the State to obtain an NPDES permit before any such discharge. OCGA § 12-5-30 (a); *Upper Chattahoochee Riverkeeper*, 318 Ga. App. at 503 (1). The EPD administers the NPDES program within the State. See OCGA §§ 12-5-23; 12-5-30; *Upper Chattahoochee Riverkeeper*, 318 Ga. App. at 503 (1).

4

The State has established water quality standards based on the water's designated use. See Ga. Comp. R. & Regs., r. 391-3-6-.03. A NPDES permit must contain effluent limits if the permitting authority determines that a discharge has the reasonable potential to violate water quality standards. 40 CFR § 122.44 (d) (1) (iii).

> When determining whether a discharge causes, has the reasonable potential to cause, or contributes to an in-stream excursion above a narrative or numeric criteria within a State water quality standard, the permitting authority shall use procedures which account for existing controls on point and nonpoint sources of pollution, the variability of the pollutant or pollutant parameter in the effluent, the sensitivity of the species to toxicity testing (when evaluating whole effluent toxicity), and where appropriate, the dilution of the effluent in the receiving water.

40 CFR § 122.44 (d) (1) (ii). A permit is "wrongfully issued" if "the facts and discretionary decision of the ALJ are contrary to those made by the [EPD]." (Punctuation omitted.) *Coastal Marshlands Protection Committee v. Altamaha Riverkeeper*, 315 Ga. App. 510, 514 (726 SE2d 539) (2012).

In its amended petition, Columbus alleged that the 2020 permit was wrongfully issued because the new limits on fecal coliform and chlorine were unnecessary,

5

unreasonable, and unlawful.[1] Columbus claimed that, inter alia, the end-of-pipe limit for fecal coliform was not derived in accordance with applicable law, the Columbus CSO does not have a reasonable potential to cause an excursion above the applicable water quality standard, and the end-of-pipe limit for fecal coliform is not necessary to achieve or maintain water quality standards.

In its motion for summary determination, Columbus argued, inter alia, that the EPD did not undertake a valid reasonable potential analysis, but instead relied on categorical assumptions about possible violations of water quality and that the EPD's analysis failed to consider existing controls and failed to properly consider dilution. Columbus presented affidavits from experts explaining that the EPD did not comply with the regulatory requirements for completing a proper reasonable potential analysis, did not properly consider existing controls which had so far prevented any water quality violations, and did not properly consider dilution, and that a proper reasonable potential analysis demonstrated no reasonable potential for the system to cause or contribute to water quality violations. Columbus also presented evidence that no water quality violations had resulted from its overflows and that the amount of

---

[1] Columbus also challenged the permit's requirement that it monitor discharge at a particular outfall, but later withdrew that claim.

bacteria in the water could increase substantially without causing or contributing to violations.

In the EPD's motion for summary determination, it argued that it followed all legal requirements in issuing the 2020 permit and that it undertook a legally sufficient reasonable potential analysis, properly considered existing controls, and was not required to consider dilution because bacteria can reproduce in the receiving water. In response, Columbus maintained that instream water quality monitoring data confirmed that Columbus had not caused or contributed to a single excursion above instream water quality standards since the long-term control plan was completed, and that its expert's analysis confirmed that Columbus had no reasonable potential to cause an excursion above the instream standard. Columbus "dispute[d] many of EPD's statements of fact" and argued that "these disputed facts defeat EPD's motion" for summary adjudication. Columbus asserted, however, that because Columbus "sought summary determination on purely legal grounds . . . any disputes of fact [did] not otherwise impact the relief sought by Columbus in its [m]otion."

In considering this issue, the ALJ determined that the EPD did not merely rely on categorical assumptions regarding wastewater treatment facilities, but also

reviewed and analyzed effluent discharge data and considered the existing controls. The ALJ ultimately granted the EPD's motion for summary determination.

In affirming the decision of the ALJ, the superior court found that while Columbus's evidence "could have created an issue of fact as to whether certain of EPD's conclusions were correct, that was not the issue that was before the ALJ on summary determination." Instead, according to the superior court, Columbus presented a "binary challenge": that the EPD did not conduct a reasonable potential analysis *at all*. The superior court determined that because the EPD presented unrefuted evidence that it conducted a reasonable potential analysis, the ALJ was entitled to rely on the EPD's evidence and grant summary determination to the EPD, despite the fact that, according to the superior court, "[c]ertain findings by the ALJ border on determinations of questions of fact[.]"

On appeal, Columbus argues that because it submitted expert testimony sufficient to raise a genuine issue of matters of fact material to determining if the permit was wrongfully issued, the ALJ erred by granting summary determination to EPD.[2] The EPD contends that the ALJ properly granted summary determination

---

[2] Chattahoochee Riverkeeper argues that Columbus should be barred from challenging the ALJ's decision based on a genuine dispute about material facts under the doctrines of judicial estoppel and invited error even though the superior court did

8

because Columbus presented a narrow issue to the ALJ — whether the EPD conducted a reasonable potential analysis before imposing the new fecal coliform limit. According to the EPD, factual disputes involving differences between the EPD's reasonable potential analysis and Columbus's experts' analyses were immaterial to Columbus's claims because Columbus contested the existence, rather than the propriety, of the EPD's reasonable potential analysis.

However, the issue on appeal is not whether the ALJ correctly denied *Columbus's* motion for summary determination; it is whether the ALJ correctly granted the *EPD's* motion for summary determination. Although Columbus sought summary determination based, in part, on its contention that the EPD had not performed a valid reasonable potential analysis, the claims that Columbus presented to the ALJ in its amended petition were not limited to issues that could be resolved as a matter of law. Columbus alleged in its amended petition that the permit was wrongfully issued for a number of reasons, including that the "Columbus CSO does

_____

not address these issues. According to Chattahoochee Riverkeeper, Columbus repeatedly took the position before the ALJ that there were no disputed material facts and that the case was ripe for summary adjudication. However, based on our review of the record, we are not persuaded that Columbus agreed that there were no disputed issues of material fact that precluded a grant of summary determination to the EPD. Consequently, we decline to affirm based on judicial estoppel or invited error.

9

not have a reasonable potential to cause an excursion above the applicable water quality standard;" the "end-of-pipe limit for fecal coliform is not necessary to achieve or maintain water quality standards;" and "the water quality data demonstrate the Columbus CSO is fully protective of instream water quality standards." Columbus submitted an affidavit in which one of its experts stated that he had "reviewed water quality data collected by Columbus dating back to 2012" and that "[t]his data demonstrates that the Columbus [combined sewer system] has no reasonable potential to cause an excursion above instream water quality standards." In another affidavit presented by Columbus, a different expert stated that "CSO discharges from [Columbus's] system do not have reasonable potential to cause or contribute to an exceedance of water quality standards, and therefore no effluent limitation is required." At oral argument before the ALJ on the cross-motions for summary determination, Columbus argued that the "water quality standard has been met, and as long as the water quality standard is met, there's no authority to impose a more stringent limit, nor is there any need to do so," and reminded the ALJ that its experts had opined that, after Columbus implemented the long-term control plan, "there is no longer any reasonable potential for [its] facilities as controlled to cause or contribute to an excursion." Disputes of fact regarding whether the Columbus CSO has the

reasonable potential to cause an excursion above the applicable water quality standard are material to Columbus's claim that the 2020 permit was wrongfully issued and precluded the grant of summary determination to the EPD. See Ga. Comp. R. & Regs., r. 616-1-2-.15 (2) (c). Consequently, the ALJ erred in granting summary determination to the EPD, and the superior court erred in affirming that grant of summary determination.

2. In light of our holding in Division 1, we need not address Columbus's remaining enumerations of error.

We reverse the superior court's decision and remand the case to the superior court with the direction that the superior court in turn remand the case to the ALJ to hold an evidentiary hearing and "make an independent determination on the basis of the competent evidence presented at the hearing." Ga. Comp. R. & Regs., r. 616-1-2-.21 (1).

*Judgment reversed and case remanded with direction. Dillard, P. J., and Pipkin, J., concur.*